## EDWIN R. POWELL *v.* FRANKLIN WOODWORTH.

### *Rescission of Contract.*

A purchaser who is entitled to rescind the contract for fraud, but who delays doing so for the purpose of affording the vendor, at his request, an opportunity of attempting to make the thing sold of value and satisfactory to the purchaser, is not precluded by such delay from thereafter rescinding the contract.

TROVER, with counts in case. Plea, the general issue. Trial by jury, and verdict for the defendant, April term, 1873, PIERPOINT, Ch. J., presiding.

It appeared that the plaintiff, a resident of Cambridge, Vermont, claiming to be the inventor of an improved thill-coupling, and to have obtained letters patent therefor under the laws of the United States, on the 18th of September, 1867, sold and conveyed to one C. B. Stowe, a resident of Waltham, Vermont, one undivided third of the right for the states of Massachusetts and Connecticut, and received from the said Stowe therefor, the sum of $500 in cash and the said Stowe's three promissory notes of that date, for the sum of $500 each, all payable to the plaintiff or bearer ; one, on or before December 1, 1867 ; one, on or before January 1, 1868 ; and one on or before February 1, 1868 ; that soon after said sale, Stowe went to Worcester, and other places in Massachusetts, and endeavored to make sales of said patent ; but failing, on the most diligent efforts, to make any sales, he returned home ; that about the time of the maturity of the first of said notes, in December, 1867, all three of said notes were delivered by the plaintiff to the defendant, whose place of residence and of business, was then, and ever since has been, in Burlington, he giving a receipt therefor as follows :

" Received, Burlington, December 5th, 1867, of E. R. Powell, three notes against C. B. Stowe, of Waltham, Vt., for the sum of five hundred dollars each, payable to said E. R. Powell or bearer, on the 1st day of December, January, and February next, respectively, and dated September 18th, 1867, and account to said Powell for same, with reasonable compensation, or return on demand.

F. WOODWORTH."

That said notes were thereafter kept by the defendant until the spring of 1869, when, nothing having been paid to him thereon, he surrendered them to Stowe, who tore off the surname of the signature to each note, leaving nothing but the initials of the christian name; that on the first of October, 1868, and while the defendant so held said notes, he, by the plaintiff's written direction, endorsed on said notes as paid, the sum of $100; $40 of which was applied on the note first due, and $30 on each of the other two. It also appeared that in August or September, 1870, and after said notes were so surrendered to Stowe, the plaintiff, at Cambridge, demanded said notes of the defendant, and was informed by him that they had been so surrendered; that after said demand, the defendant procured said notes from the said Stowe, also three other notes signed by Stowe, of precisely the same date, form, and tenor as those first mentioned, all of which have remained in defendant's possession ever since; that in the spring of 1871, at Underhill, Vermont, the plaintiff repeated said demand, to which the defendant, not having received said notes, or any of them, from Stowe, replied, that if the plaintiff would call for the notes at Burlington, he could have them, and the plaintiff responded : " You said you had given them up to Stowe, and the quicker you get them and give them up to me the better." The testimony on the part of the defendant tended to show that the pretended invention and patent for which said notes were given, were of no value whatever, but were utterly and absolutely worthless, so that there was no consideration for said notes, and that Stowe was induced to make said purchase, and to execute said notes, wholly by the false and grossly fraudulent representations of the plaintiff. The plaintiff's testimony tended to show the contrary. It also appears that within a reasonable time after the discovery by Stowe of the fraud which had been so practiced upon him, he informed the plaintiff of the discovery, and told him that he would have nothing further to do with the patent, and that he should not pay the notes; that immediately after this interview between the plaintiff and Stowe, and on the same day, the plaintiff applied to the defendant, who was acquainted with Stowe, and requested him to take the notes, and endeavor, by persuasive

means only, to induce Stowe to pay something upon them; which the defendant, as a mere favor to the plaintiff, and without expectation of compensation, consented to do; and thereupon the notes were delivered to the defendant, and the said receipt executed. The testimony on the part of the defendant, relative to the repudiation of the purchase, and of the notes by Stowe, and to the circumstances under which the notes were delivered to the defendant, was contradicted by the plaintiff, who testified that Stowe did not complain of any fraud, nor deny his liability on the notes; but that on the contrary he evinced a willingness to pay them; and that on the same occasion referred to in the defendant's testimony, Stowe, on the suggestion of the plaintiff that something could be made out of the patent if he could take hold of it, consented that the plaintiff might go to Massachusetts, and endeavor to make sales of the right; and that accordingly the plaintiff did go to Massachusetts, and before the first of October, 1868, succeeded in realizing from Stowe's interest in the patent, the $100 which was endorsed on said notes as aforesaid. The defendant's testimony farther tended to show, that the plaintiff, in the winter of 1868–9, and after his return from Massachusetts, Stowe still insisting upon a rescission of the contract between him and the plaintiff, and a return of said notes, and of the money so paid to the plaintiff by him at the time of the execution thereof, promised Stowe that the notes should be surrendered to him, and that the plaintiff would so direct the defendant by letter; that afterward, and on the 24th of February, 1869, the plaintiff wrote the defendant as follows:

"JEFFERSONVILLE, Feb. 24.

F. Woodworth, Esq.

Dear Sir: If C. B. Stowe will give you the deed I gave him of my coupling, and it has not been recorded in Washington, you may give him those notes.

Yours Resp., E. R. POWELL."

That shortly afterwards the defendant had an interview with Stowe, in which Stowe informed the defendant that said deed had been recorded; but that if the plaintiff would consent to give up the notes, Stowe would return to the plaintiff his deed, and would at his own expense, reconvey to the plaintiff, and procure the re-

conveyance to be duly recorded at Washington; that this proposition was soon afterwards communicated to the plaintiff by the defendant, and the plaintiff replied that he did not care anything about the deed or a reconveyance, and that the defendant might give up the notes to Stowe. The plaintiff's testimony tended to show that this communication was not made to him, and that he did not direct the giving up of the notes. It further appeared that the defendant offered to return to the plaintiff the three notes so executed and delivered by Stowe to the plaintiff, as aforesaid, in their said mutilated condition, but with the full name of Stowe restored, and also at the same time offered to deliver to the plaintiff the three new notes made by Stowe as aforesaid, but that the plaintiff declined to accept them. As respects the time when this offer was made, the testimony was conflicting; that on the part of the defendant tending to show that it was made previous to the commencement of this suit; that on the part of the plaintiff tending to show that it was a few days afterwards.

At the time of the offer by the defendant to return and deliver said notes as aforesaid, the parties were together in the same room, but were twenty feet apart, and the defendant held the notes in his hand, but, the plaintiff refusing to accept them, they were not presented to nor taken by him; and his uncontradicted testimony tended to show that he was not aware of any mutilation of the original notes, nor of the execution by Stowe of the new ones, until he was informed thereof during the trial.

The testimony on the part of the defendant tended to show that although Stowe had some property which was subject to attachment at the time of the maturity of said notes, he resolved, on discovering the fraud practiced upon him as aforesaid, that he would not pay the notes, nor have any visible attachable property in his hands; and that, accordingly, he had ever since kept his property so invested and concealed that it could not be reached by attachment. The plaintiff's testimony tended to show that while the defendant held said notes, there was a time when a portion of the amount of said notes might possibly, by sufficient vigilance, have been secured by attachment.

The plaintiff requested the court to charge the jury,

1. "That if they find that the plaintiff made a demand of the defendant, at Cambridge, for said notes, and also find that the defendant neglected and refused to deliver said notes to the plaintiff at that time, or within a reasonable time thereafter, then the court should tell the jury that such a neglect and refusal was evidence from which they might find a conversion of said notes, unless they find said defendant had authority to surrender said notes, if the case was made out in other respects.

2. "That if the jury find that the plaintiff made demand of the defendant at Wires's, in Underhill, for said notes, and also find that the defendant neglected and refused to deliver said notes to the plaintiff at that time, or within a reasonable time thereafter, as plaintiff's testimony tended to show, then the court should tell the jury that such a neglect and refusal was evidence from which they might find a conversion of said notes, unless they found that said defendant had authority to surrender said notes, the case being made out in other respects.

3. "That if the jury find that said right to said patent thill-couplings and the territory, was sold and deeded to said Stowe, and said $500 paid, and said three notes obtained from Stowe through the fraudulent representation of the plaintiff, as the defendant's evidence tends to show, and they also find that after said notes were thus obtained, said Stowe was fully informed of said fraudulent representation, and of all the fraud that was committed in the said sale, and in obtaining said notes, and that after returning home to Vermont, the said Stowe agreed with the plaintiff for the plaintiff to go to Massachusetts and make sale of the right in Massachusetts and Connecticut, and endorse on said notes one third of the profits, as the plaintiff's evidence tended to show, and pursuant to that agreement the plaintiff did go to Worcester, Massachusetts, and made sale of Worcester county, and had $100, one third of the profits, endorsed on the notes, as the plaintiff's evidence tended to show,—that that would be a ratification of the contract, and a waiver of any right to rescind the contract on account of any fraud or misrepresentation in the trade in obtaining the notes.

4. "That the measure of damages was *prima facie* the face of the notes."

Except as hereinafter stated, the court omitted so to charge, and upon the points embraced in said requests, the court charged as follows:

If the notes in question were surrendered by the defendant to Stowe, wrongfully, and without authority from the plaintiff, the

surrender was itself a conversion of the notes by the defendant, and entitles the plaintiff to recover, without proof of a demand upon the defendant for the notes. But even if a demand were necessary in order to perfect the plaintiff's right of action, neither the demand which was made at Cambridge, nor the one which was made at Underhill, was sufficient, unless at the time of the making of the demand, the defendant had the notes with him, so that he could deliver them. By the contract under which the notes were received by the defendant, he was not bound to seek the plaintiff for the purpose of delivering them to him ; and, to make a demand of them effectual to charge the defendant, it was necessary that it should have been made either at the defendant's residence, or at his place of business, or at some place where he had the notes present, so that he could surrender them.

It is claimed on the part of the plaintiff, that even if the notes were obtained from Stowe through the fraud of the plaintiff, it was necessary, in order to enable Stowe to avail himself of the fraud as a defence to the notes, that he should, on discovering the fraud, or within a reasonable time thereafter, have repudiated the notes, offered to restore to the plaintiff the right which Stowe acquired by his deed, and demanded his notes and money. This is so. If, after Stowe had ascertained that he had been defrauded, he did not see fit to take advantage of the fraud, but concluded to go on with his contract, and see what he could do with the patent, and to abide by his contract, he had a right so to do ; and in that case, the plaintiff would have a right to hold him to his bargain. Upon this point, the evidence tends to show that when Stowe came back and met Powell again, as he did about the time the first note fell due, he told Powell that he would not pay those notes ; that he had defrauded him in respect to the transaction, and that he would have nothing further to do with it ; still, he did not offer to return the deed, and did not tender a re-deed. It appears that at this time negotiations were entered into between Stowe and the plaintiff, that the plaintiff would go to Massachusetts and see what he could do, and see if he could sell the right, and Stowe assented to it. Powell did go to Massachusetts and made a sale, as he says, and got some money, and that Stowe's interest in it amounted to $100, and that he directed that amount to be endorsed upon these notes in the manner spoken of in the testimony. Nothing further passed between the parties, I believe. If at the time these parties came together, and Stowe repudiated the transaction, and refused to pay the notes upon the ground that he had been defrauded in regard to it, and upon Powell's representation that he could make a good thing, or that he could

make it go if he could go down there and make sales—get the thing started—and Stowe assented to his going down, and he did go, and did make this sale, in the expectation that something might be made out of it, and returned, and nothing farther was said between Powell and Stowe in regard to this matter, and the thing was left right there, Stowe awaiting the result to see what Powell's operation was going to amount to, the fact that he waited until Powell made these efforts to see whether he could put the thing in such shape that it would be a paying business, and result in something, and did not then repudiate the contract for that reason, would not deprive him of the right to repudiate it subsequently, after Powell had made his effort to establish the thing and make it a paying operation, if in so doing he failed to do it, and if Stowe, subsequently, within a reasonable time, repudiated the transaction, and offered to reconvey the right. Whether this thing transpired as the evidence tends to show, on the one side or on the other, is a question which is for the jury to settle upon the testimony. If the jury find that this fraud was perpetrated, and that Stowe simply waited the effort of Powell to put this thing in a train that would make it pay, before repudiating it—gave Powell that opportunity, and Powell made the effort and failed, and Stowe subsequently repudiated the transaction so that it operated as a repudiation, the plaintiff cannot recover by reason of this failure to repudiate it at once, if he delayed, at the request of Powell, for the purpose of enabling him to see what he could do in the way of showing that it was a profitable investment; provided he subsequently repudiated the transaction, and offered to return the deed, as the evidence tends to show was done through the defendant.

On the subject of damages, the jury was instructed that although the plaintiff could have maintained an action on the mutilated or new notes which were offered to him by the defendant, as the testimony tended to show, and although he could have maintained an action on the original notes, even while they were in Stowe's hands after the surrender of them to him by the defendant, if the surrender was unauthorized and wrongful, this would constitute no defence to this action; because, in the prosecution of such suits, the plaintiff might be embarrassed, and subjected to expense and inconvenience in making his proof. But the fact that, as matter of law, he could maintain such suits, was proper to be considered by the jury in estimating the damages, if the jury should find, under the instructions of the court, that the plaintiff was entitled to recover at all. So, too, that the pecuniary circumstances of Stowe was a proper matter for the con-

sideration of the jury in assessing damages. If he was insolvent, and nothing could have been collected of him, this would go in mitigation of damages; but, if the case was made out in other respects, the plaintiff would still be entitled to nominal damages, at least.

The rules of law laid down in the charge as above recited, were suitably explained and illustrated; and the charge upon all other points involved in the case, was correct and satisfactory.

To the omission of the court to charge as requested, so far as there was such omission, the plaintiff excepted.

*L. F. Wilbur* and *Henry Ballard*, for the plaintiff.

The first and second requests of the plaintiff should have been complied with. The refusal and neglect of the defendant to deliver the notes to the plaintiff at the time of the demand, or within a reasonable time thereafter, was evidence of their conversion. A demand at his residence or place of business, was not necessary, to make it the duty of the defendant to deliver the notes to the plaintiff. *Gragg* v. *Hull*, 41 Vt. 217; *Magee* v. *Scott*, 9 Cush. 148. Even if it was the duty of the plaintiff to make a demand for the notes at the defendant's residence or place of business, the defendant not having put his neglect or refusal to deliver them on that ground, and saying that he had surrendered them to Stowe, precludes him from setting up the defence of a want of a demand at the defendant's residence or place of business. *Albee, admr.* v. *Cole,* 39 Vt. 319. If what the plaintiff said to the defendant on the occasion of the demand at Wires's, "The quicker you get them and give them up to me the better," was a *waiver* of any previous conversion of the notes, as the court charged it was, then the charge that, "if the defendant wrongfully and without authority surrendered the notes, that was itself a conversion of them, and entitled the plaintiff to recover without proof of a demand," would not cure the error in charging "that the demand at Wires's was insufficient, unless the defendant had then the notes with him."

The plaintiff, by his third request, asked for a specific charge based on a state of facts that the evidence tended to show, and

the charge should have been given substantially as asked for, if it embodied a sound proposition of law. The court omitted to comply with that request in terms or in substance.

A party to a contract cannot, after having been fully informed of all the facts that constitute such a state of things as would entitle him to rescind a trade, afterwards endeavor to reap further advantages under the contract, and, failing to make much by standing to the trade, as he was in hopes to, then rescind. The party wishing to rescind must act promptly when informed of the fraud. *Downer* v. *Smith*, 32 Vt. 1; *Matteson* v. *Holt & Hawkins*, 45 Vt. 336; 5 U. S. Dig. 35, § 158; 10 Shep. 35; 12 Barb. 641; 14 Ib. 594; 17 Cal. 380.

If, after the trade was made and the notes given, Stowe was fully informed of the fraud, and after that, he agreed and consented to have the plaintiff go to Massachusetts and make sale of the patent, and have one third of the profits that might be realized from any sales that the plaintiff might succeed in making, endorsed on the notes, and the plaintiff accordingly did go, and made sale of Worcester county and realized $300 therefrom, and had $100 endorsed on the notes, that would be a clear ratification of the trade, and would put Stowe in a position that he would not be entitled to rescind the trade on account of the fraud. *Downer* v. *Smith, supra*, and cases there cited; *Hadley* v. *House*, 32 Vt. 179; *Harrington* v. *Lee*, 33 Vt. 249; *Mallory* v. *Leach*, 35 Vt. 156; *Kingsley* v. *Wallis*, 2 Shep. 57; *Ragan* v. *Gaither*, 11 Gill & J. 472; 10 Humph. 577; 12 U. S. Dig. 226, § 103; *Masson* v. *Bovet*, 1 Denio, 69; *Negley* v. *Lindsay*, 67 Penn. (5 American) 427; *James* v. *Emery*, 40 N. H. 348; Hilliard Sales, 317, 319; *Hoffman et al.* v. *Noble et al.* 6 Met. 74; *Hunt* v. *Silk*, 5 East, 449; 20 How. 150.

It was error for the court to omit to charge in accordance with the plaintiff's fourth request. In an action of trover to recover for notes executed by persons other than the defendant, when a conversion of the notes is proved, the measure of damages is, *prima facie*, the face of the notes. *Robbins* v. *Packard*, 31 Vt. 570.

*A. C. Dixon* and *E. R. Hard*, for the defendant.

Previous to either of the demands by the plaintiff upon the defendant for a return of the notes, they had confessedly been surrendered to Stowe by the defendant. If this surrender was unauthorized by the plaintiff, as his testimony tended to show, it was, of itself, a conversion of the notes by the defendant, and no demand was necessary. If the surrender was authorized by the plaintiff, as the defendant's testimony tended to show, no subsequent demand upon him could create a cause of action. The plaintiff's first and second requests were, therefore, wholly impertinent and immaterial, and the court would have been justified in wholly omitting to notice them. And even an erroneous charge upon this point, would, by reason of its immateriality, constitute no proper ground for reversing the judgment. *Learned* v. *Bellows*, 8 Vt. 79 ; *Houghton* v. *Slack*, 10 Vt. 520 ; *Fullam* v. *Goddard*, 42 Vt. 162 ; 5 Pet. 135 ; 14 Wal. 374, 417, 569 ; 10 Wal. 528. But if a proper demand would have been effectual for any purpose, a demand at Cambridge or Underhill, when the notes were not present, could have no effect upon the plaintiff's right to recover.

The plaintiff's third request was properly denied, and the charge upon the point therein embraced was correct. If, on discovery by Stowe of the fraud, and his repudiation of the contract, the plaintiff, as he himself testified, proposed to make further personal efforts to dispose of Stowe's right in the patent, and Stowe assented, in the belief or hope created by the plaintiff's assurance, that the purchase by Stowe could thus be made advantageous to him, his delay in rescinding, thus caused, did not deprive him of the right to rescind afterwards

As the jury did not reach the question of damages, the question presented by the plaintiff's fourth request is wholly immaterial here ; and if it was not so, the plaintiff's exception upon this point would be unavailing, because the notes having been partially paid, the measure of damages was not, "*prima facie*, the face of the notes."

The opinion of the court was delivered by

REDFIELD, J.  The plaintiff having obtained letters patent for an improved thill-coupling, conveyed to C. B. Stowe one third of the right for Massachusetts and Connecticut, for the consideration of $500 cash, and three $500 notes signed by said Stowe.  The plaintiff delivered said notes to the defendant, December 5th, 1867, and took his accountable receipt therefor.  Stowe refused to pay the notes on the alleged ground that the sale to him of the patent right, was effected by the fraud of the plaintiff, and notified the plaintiff that he would have nothing further to do with the patent. The plaintiff offered to make an effort himself to make sales of the same in Massachusetts, and did make a sale in Worcester for $300, and endorsed $100 of such avails on Stowe's notes.  The defendant's testimony tended to show that the plaintiff went to Massachusetts to effect such sale, of his own motion and at his own risk ; and when he returned Stowe still insisted that the sale should be rescinded for the fraud of the plaintiff, and again refused to pay the notes, and demanded the return of the $500, which he had paid towards the purchase.  The letter of the plaintiff to the defendant of February 24th, together with the parol evidence, tends strongly to prove that plaintiff authorized defendant to surrender the notes to Stowe in rescission of the contract.

I.  The court charged the jury that if the defendant surrendered the notes to Stowe, without authority, it was, of itself, a conversion of the notes.  If he was authorized to surrender the notes, then the plaintiff would be concluded by it, and defendant would not be required to respond to any demand, whether properly or improperly made.

II.  We think that the charge of the court was reasonable and just, as to the bearing of plaintiff's effort to make sales in Massachusetts.  If, at plaintiff's instance, Stowe acquiesced in plaintiff's going to Massachusetts, and after his effort and return, Stowe still insisted that the contract should be rescinded for fraud, Stowe should not be prejudiced by such delay, occasioned by the plaintiff. The rights of the parties were suspended to await the result of plaintiff's experiment.

Under the charge of the court, the jury must have found that after the plaintiff had made his effort to sell the patent right, Stowe demanded a rescission, demanded the notes and money, which had been paid, and offered to reconvey all title which he had received from the plaintiff, and that by consent of the plaintiff the defendant surrendered the notes to Stowe. This constituted a full defence to the action.

And we think the court complied substantially with plaintiff's requests, so far as applicable to the case, as made by the proof. The judgment of the county court is affirmed.