## LUMAN P. NORTON *v.* FRANCIS A. GLEASON.

### *Evidence. Fraud. Recission of . Contract.*

1. The defendant gave his note for the premiums on certain life insurance policies June 8th. June 20th he rescinded the contract, alleging misrepresentation on the part of the agent. *Held*, not permissible to show that June 11th he was examined by a physician for other insurance, as tending to prove that he wished to avoid these policies not for any misrepresentation, but that he might try some other company.

2. Defendant claimed to rescind this contract because certain estimates, which were represented to be those of the company, were not in fact. He learned of the fraud June 11th, wrote a letter of inquiry to the company June 12th, and, not receiving any reply to that letter, rescinded the contract June 20th. *Held*, that it was a question for the jury, under proper instructions, whether the rescission was seasonable.

3. In seeking to rescind a contract on the ground of fraud, the defrauded party need only restore what he has received; he is not responsible for what the wrong doer himself has done in consequence of the fraud.

Assumpsit for the account of a promissory note. Trial by jury at the December term, 1888, Taft, J., presiding. Verdict and judgment for the defendant. Exceptions by the plaintiff.

The plaintiff was the general agent of the North Western Mutual Life Ins. Co. of Wisconsin, and on the 14th May, 1887, took the application of the defendant for two policies upon his life in said company. It was then agreed that when the policies were delivered the plaintiff was to pay the amount of the premiums to the company and take the defendant's note to himself for the amount, and in pursuance of said agreement he did deliver the policies to the defendant, who accepted them and gave the note in suit for the premiums.

The policies were by their terms entitled to share in certain surplus of the company, and during the negotiations which led up to the taking of the policies, the plaintiff produced a book, called the North Western Estimate book, containing an estimate of the probable amount of surplus to which the policies of the defendant would be entitled to at their maturity. The defend-

ant claimed that the plaintiff represented to him that these estimates were those of the company, that they were not, and that in consequence of this fraudulent representation of the plaintiff the note was void.

The plaintiff admitted that the estimates were not those of the company, and denied that he ever so represented to the defendant. This was the only ground on which the defendant denied his liability, and this question was submitted to the jury under proper instructions.

The plaintiff took several exceptions in the course of the trial which are here stated in the order in which they are disposed of in the opinion.

1. Upon this point the bill of exceptions reads as follows:

" Upon the trial the plaintiff proposed to show that the estimates referred to were true and conservative, the defendant did not object, but the court excluded the evidence upon that subject as immaterial."

It did not appear that any exception was taken to this action of the trial court.

2. The policies in question were delivered June 8, and were returned to the plaintiff June 20. The plaintiff claimed that the defendant did not attempt to rescind the policies for the reason by him alleged, but to get rid of the policies and take insurance in other companies, and the plaintiff offered to show by the defendant that on the 11th of June he was examined by a physician, for the purpose and with a view of taking out a life policy similar to these policies, in another company, as bearing upon the claim that he made when he sent these policies back the first and last time.

The following is a copy of the letter referred to in this exception:

June 20th, 1887.

Mr. L. P. Norton,

Dear Sir:—Inclosed please find insurance policies of which I want you to have cancelled and return note to me. I have looked up insurance business pretty thoroughly and

I have decided to carry no more insurance and to take out all paid up policies in the company that I can. The N. W. Co. say they wholly discard such rates as given by their agents and positively given to me by you and I have written on to the company asking them to confirm your statement with me. They do not answer. Now do not ask any more questions nor ask me to carry any more insurance, as I positively decline. Please return the note and oblige.

I shall say nothing of this to any one unless obliged to.

Res. yours,

F. A. GLEASON.

3. The nature of this exception appears in the opinion.

4. Ex. No. 9 was a letter from the Ins. Co. to the plaintiff denying that the company had written the defendant repudiating the estimates in question.

By the terms of the original arrangement between the parties the plaintiff was to pay the amount of the premiums to the company. It appeared that he had done so after receiving the defendant's note in suit, and before notice that the defendant claimed to rescind the contract.

*Batchelder & Bates*, for the plaintiff.

The court should have held, as a matter of law, that the rescission was not seasonable. When the facts are in dispute, that question is for the jury, but when, as here, there is no controversy of fact, it becomes a matter of law. *Powell* v. *Woodsworth*, 46 Vt. 386 ; *Downer* v. *Smith*, 32 Vt. 1; *Bruce* v. *Davenport*, 3 Keyes, 472 ; *Cobb* v. *Hatfield*, 46 N. Y. 533 ; *Schiffer* v. *Deitz*, 83 N. Y. 300.

The defendant could not rescind without putting the plaintiff *in statu quo*, and this he did not do by merely sending back the policies. He must pay the defendant the money which he had advanced. *Cobb* v. *Hatfield*, *supra*.

*W. B. Sheldon and Waterman, Martin & Hitt*, for the defendant.

Whether the defendant rescinded the contract within a seasonable time was for the jury, under proper instructions from the court.

*Gales* v. *Bliss*, 43 Vt. 290 ; *Whitcomb* v. *Denio*, 52 Vt. 382.

The wrong-doer cannot deny the right to rescind because his own acts have made it impossible for the other party to restore him to his original position. *Hammond* v. *Pennock*, 61 N. Y. 145.

The opinion of the court was delivered by

VEAZEY, J. Taking up the exceptions in the order in which they stand in the plaintiff's brief, the first point urged was not the subject of exception in the court below.

The second point is, that it was error for the court to exclude the testimony offered by the plaintiff to show that the defendant, on the 11th day of June, was examined for the purpose and with a view of taking out policies in other companies. This is put on the ground that on the trial the only defense claimed was alleged false representations of the plaintiff at the time the defendant made his application for insurance, whereas the plaintiff claims that it appeared by the defendant's letter of June 20, that he was seeking to surrender his policies and give up his contract for other and different reasons.

Assuming that the proposition of law is sound upon which he rests, as stated in the brief, for the basis of the alleged error in excluding the testimony, the argument fails, because there is no such inconsistency as claimed. The letter charges the same wrong which constituted the defense on the trial; and in its allusion to taking insurance, we do not understand it as a statement that the defendant was not going to take any more insurance of any kind, but was intending to take all the paid-up policies that he could. The clause, "to carry no more insurance," taken in connection with the next line, must have had reference to insurance requiring stated premiums. So that the letter was consistent with the fact of examination for other insurance and with the defense made on the trial.

The next point urged is that the court should have held, as matter of law, that the defendant did not repudiate the contract in a reasonable time. This is put on the ground that the facts were not in controversy.

The plaintiff was the general agent of the North Western Mutual Life Insurance Co., and in the negotiations with the

defendant the plaintiff produced a book, called the North West-ern Estimate Book, containing an estimate of the probable amount of surplus to which the policies taken by the defendant would be entitled at their maturity, which was $794 on each thousand dollars of insurance. The defendant's evidence tended to show that the plaintiff represented the estimates to be those of the company. It was conceded they were not the estimates of the company, and the plaintiff denied that he represented they were. The policies were issued the 8th of June, and the defendant testified that he learned that said estimates were not those of the company before the 11th of June, and he wrote to the company in reference to the matter on the 12th of June, and not getting any reply before the 20th of June, he on that day returned the policies and wrote a letter to the plaintiff, called exhibit 5, enclosing the policies and demanding his note. The parties lived in adjoining towns, and there was a daily mail between these towns.

The fraud of the plaintiff in the alleged misrepresentations was the defense on the trial. The question whether he made them was submitted to the jury. A contract induced by fraud is only voidable, not void, and if, after discovery of the fraud, the party acquiesces by express words or an unequivocal act, such as treating the property as his own, his election will be determined, and he cannot afterwards reject the property. Mere delay also may have the same effect, if, while deliberating, the position of the vendor has been altered. Benj. on Sales, s. 342, and cases cited in notes. Different forms of expression have been used by courts in stating when the defrauded party must rescind. In this State, in *Mateson* v. *Holt*, 45 Vt. 336, it was said : "The right of recission must be exercised at the earliest practicable moment after discovery" of the ground of it. In *Hilton Safe Co.* v. *Lisdale*, 48 Vt. 83, "within reasonable time" is the expression. In *Downer* v. *Smith*, 32 Vt. 1, "with all reasonable dispatch." In *Powell* v. *Woodsworth*, 46 Vt. 378, it was held that a purchaser who is entitled to rescind the contract for fraud, but who delays doing so for the purpose of affording the vendor, at his request, an opportunity of attempt-

ing to make the thing sold of value and satisfactory to the pur-chaser, is not precluded by such delay from thereafter rescinding the contract. In *Schiffer* v. *Dietz*, 83 N. Y. 300, the court said : " A party claiming to rescind a contract for fraud must act promptly on discovery of the fraud." In *Cobb* v. *Hatfield*, 46 N. Y. 533, "at the earliest practicable moment after discov-ery of the cheat," is the language.

We do not understand that the different forms of expression, as above quoted, show conflict in the rulings of the respective courts as to the degree of promptness required in rescinding ; but they do indicate that it may vary under different circumstances.

The case of *Powell* v. *Woodsworth*, *supra*, and the text of Benjamin show that mere delay is not necessarily conclusive. " The earliest practicable moment" is the sharpest expression found. No court says the earliest moment. The adjective *practicable* imports difference according to circumstances. Assuming that the law requires action at the earliest practicable moment, it would still be a question of fact, at least generally, when that moment arrived, even if there was no dispute as to the circum-stances. Some may point one way and some the other. No case is cited where it was held to be a matter of law for the court. In *Andrew* v. *Hensler*, 18 Wall. 254, reasonable dili-gence is the requirement, and it was there held that what is reasonable diligence is a question of fact to be decided by the jury according to the special circumstances of each case.

In this case the defendant had learned that the estimates in the book produced were not those of the company, as repre-sented, not that the latter would not adopt them or make like estimates. He might reasonably infer that it would, in view of the relation between the plaintiff and the company. He did not acquiesce by any word or treat the policies as valid. It was, so far as appears, a case of mere delay, in good faith and fairly required in order to make the legal status clear. As the case stood we think it was clearly a question for the jury whether the defendant acted with due promptness in rescinding. The late case of *Whitcomb v. Denio*, 52 Vt. 38, is full authority for this conclusion.

Norton *v.* Gleason.

The next point is that exhibit 9 was improperly admitted in evidence. Counsel state no reason why, and we see none.

The plaintiff further contends that he was entitled to judgment notwithstanding the verdict, under his motion ; and this on the ground that he had paid to the company, before the rescission, the amount of the defendant's note to him, and if defendant would rescind he must put the plaintiff in the same position he was before he paid the money.

The right to rescind is not thus limited.

The duty of the defrauded party to restore only means that he must restore what he has received. The law does not concern itself about the losses of the wrong-doer resulting from his entanglements "in the meshes of his own knavish plots." The fault is his own, and not that of his intended victim. Where a party seeking to rescind a contract, on the ground of fraud, acts without unnecessary delay, and restores or offers to restore that which he has received, it is no answer that the wrong-doer has himself done acts which prevent his being restored to his original position. *Hammond* v. *Pennock*, 61 N. Y. 145 ; *Masson* v. *Bovet*, 1 Denio, 69.

This rule is not in conflict with the general rule that the party who would rescind a contract for the default of the other party, must be in condition to put the other party *in statu quo*. It means he must be in condition to restore *fully* on his part. When the defrauded party has returned to the wrong-doer all that the former received, then the latter is put *in statu quo*. It does not mean where he had acted with due diligence, that he must be able to put the wrong-doer into his former position as against his own acts after his fraud. The suggestion of counsel in argument, but not in his brief, that the plaintiff did not offer to restore fully because he did not offer to pay for the insurance pending the contract and before it was rescinded, is without force. It stands as it would if the subject of the contract had been the purchase of a horse instead of policies of insurance ; a seasonable restoration with notice of rescinding would be sufficient without tendering the value of the use in the meantime.

*We find no error, and the judgment is affirmed.*