### AMERICAN BANKERS' INS. CO. v. HOPKINS.

No. 7673—Opinion Filed Dec. 24, 1917.

(169 Pac. 489.)

(Syllabus.)

#### 1. Insurance—False Statements by Insured —Burden of Proof—Question for Jury.

Where, in an action on a life insurance policy, which contains a provision that "All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties," the falsity of such statements is relied upon as a defense, the burden is upon the insurer to show that such statements were made willfully and with intent to deceive; and the materiality of such statements and the intent of the insured to deceive are questions for the jury.

#### 2. Evidence — Parol Evidence — Insurance Policy.

Where a life insurance policy is contested on the ground of fraud, parol testimony tending to show the circumstances, statements, and representations which led up to and induced the making of the instrument is not inadmissible upon the ground that it tends to vary the terms of the written application for insurance and the written medical examination signed by the insured.

#### 3. Same—Life Policy—Fraud.

Where an instrument is attacked for fraud, all the circumstances and transactions leading up to and surrounding the execution of the instrument, as well as the motives and intentions that prompted the makers to execute it, may be shown by parol.

#### 4. Privileged Testimony—Statute.

By the express terms of the statute (section 5050, Rev. Laws 1910), physicians and surgeons are incompetent to testify without the consent of the patient with respect to two subjects: (a) Any communication made to him by his patient with reference to any physical or supposed physical disease; and (b) any knowledge obtained by a personal examination of any such patient. And this consent is given, according to the terms of the proviso to said section, only in the event

the patient offers himself as a witness and voluntarily testifies on the same subject.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by Marie Smith Hopkins against the American Bankers' Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Hainer, Burns & Toney, for plaintiff in error.

V. E. McInnis, for defendant in error.

KANE, J. This was an action on two life insurance policies, commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below. For convenience, the parties will be designated "plaintiff" and "defendant," respectively, as they appeared in the trial court.

The petition, which was in the usual form, alleged the issuance of the policies to Ella D. Smith, the insured, that the plaintiff was the daughter of the insured and the beneficiary designated in said policies; that Ella D. Smith died on the 19th day of May, 1914, while said policies were in full force and effect; that demand has been made upon the defendant for the payment of same, which payment was refused. The answer of the defendant admitted the issuance and delivery of the policies to Ella D. Smith, her death, etc., and by way of defense alleged in substance: That said policies were issued and delivered to said Ella D. Smith in consideration of her having entered into an application in writing therefor, wherein she covenanted and agreed that said application together with the questions and answers therein contained as to her physical condition, together with all other statements contained in said application, should become a part of said insurance policy to be issued thereon, in the event her application was accepted by the defendant. That said application was accepted by the said company, believing that the answers made by said Ella D. Smith to the questions asked her were true, and said defendant in error relied upon said answers as being true, when in truth and in fact the said Ella D. Smith had procured the said insurance policies issued to her through fraud and misrepresentation, in this, to wit: That said Ella D. Smith concealed her true physical condition, which was not apparent to the examiner, by giving false answers to certain questions contained in said application for insurance as follows:

"Q. Are you in good health? A. Yes. Q. Have you ever had tumor or cancer? A. No. Q. Have you had any serious ill-

ness? A. No. Q. When did you last consult a physician, and for what? A. February 19, 1913, on account of fracture of arm."

That the answers to these questions were false and fraudulent, and were known by said insured to be false and fraudulent at the time said answers were made. That in truth and in fact said insured at the time she made said answers was suffering from internal and malignant cancer, and had been so advised by her physicians. That she had been confined in the Frisco Hospital in St. Louis, Mo., for treatment, and had been treated for said cancer a short time prior to the time of making said application for said policies of insurance, and was at the time of said application for said policies suffering from said cancer, and had been advised by her physicians that she could not live more than one year, and that all such facts were in the possession of the insured, and were not disclosed by her to said defendant or any agent or medical examiner of said defendant company, but were willfully, fraudulently, and purposely withheld from said company, and from its said medical examiner, for the purpose and intention of obtaining said life insurance policies, and that by reason of the false and fraudulent statements, representations, and condition of the insured in procuring said policies of insurance, the same were void and of no force and effect. That the defendant did not learn of the false and fraudulent representations made by said insured in said applications for policies until after the death of said insured, and upon discovering the same, it tendered back to the plaintiff, as beneficiary named in said policies, the total amount of the premiums previously paid thereon.

The part of the reply necessary to notice consisted of specific denials of the allegations of fraud and misrepresentation, and of each and every allegation of new matter contained in the answers, and allegations to the effect that the insured, in fact, told the examining physician of the insurance company about her stay in the hospital in St. Louis, but that he advised her that that was immaterial, and himself put down the answer of the insured to the effect that the last time she consulted a physician was in February, 1913, on account of fracture of the arm. Upon the issues thus joined there was trial to a jury, which returned a verdict for the plaintiff upon which judgment was duly rendered, to reverse which this proceeding in error was commenced.

Counsel for plaintiff in error in their brief have summarized their assignments of error as follows: (1) The court erred in over-

ruling motion for new trial filed by the plaintiff in error, and in not rendering judgment for the plaintiff in error and against the defendant in error. (2) The court erred in admitting incompetent evidence, and in admitting statements and declarations of witnesses on behalf of the plaintiff tending to vary the written application for insurance and the medical examination signed by the insured. (3) The trial court erred in refusing to allow the defendant to submit to the jury in the trial court certain portions of the depositions of Drs. Cale and Woolsey and of the nurse who attended the insured in the hospital at St. Louis, and in refusing to permit the plaintiff in error to introduce the cross-examination of said witnesses.

In support of their first assignment of error counsel for the defendant contend that by the terms of their contract the parties stipulated that the answers and statements both in the applications and answers made to the medical examiner are true in all respects, and shall be deemed to be strict warranties, and therefore the question of their materiality does not enter into the case where the parties by their contract have made them material. In support of this proposition counsel cite section 3467, Rev. Laws 1910; National Council Knights and Ladies of Security v. Owen, 47 Okla. 464, 149 Pac. 231; Jeffries, Adm'r, v. Economical Mut. Life Ins. Co., 22 Wall. 47, 22 L. Ed. 833; Aetna Life Ins. Co. of Hartford v. France et al., etc., 91 U. S. 510, 23 L. Ed. 401.

The applications for insurance made by the insured contained the following clauses:

"I hereby declare that all the statements and answers to the above questions, together with this declaration, as well as the statements and answers made or to be made to the company's medical examiner in the examination which I hereby agree to take, shall constitute the application and become a part of the contract of insurance hereby applied for, and it is further agreed that the policy herein applied for shall be accepted subject to the privileges therein contained, and said privileges shall not take effect until the same shall be issued and delivered by the said company and the first premium paid thereon in full, while my health is in the same condition as described in this application." "I hereby declare that all the statements and answers to above questions are complete and true, and I agree that they shall form a part of the contract of insurance applied for."

Each of the policies contained the following provision:

"This policy, together with the application for this insurance, a copy of which application is hereto attached, constitutes the entire contract between the parties and shall be incontestable from its date except for non-payment of premium and except as otherwise provided in this policy. All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid this policy unless it is contained in the written application and copy of such application to be attached to this policy when issued."

The trial court, after calling their attention to the issue of fraud joined by the pleadings, and the beneficiary provisions of the application and policies, instructed the jury as follows:

"You are instructed that the law presumes that the acts of all men are honest until otherwise proven, and in this connection, you are instructed that the burden of proof on the issue of fraud is upon the defendant to show by a preponderance of the evidence that Ella D. Smith was guilty of fraud in the procurement of the policies in question. And by a preponderance of the evidence is meant that evidence which is the more satisfactory and which carries with it the greater weight." "You are further instructed that the burden of proof is upon the defendant upon every issue of fraud, to show by a preponderance of the evidence that the statements made by the said Ella D. Smith, which are alleged to be false, were in fact false, that she knew them to be false when she made them, that she made them for the purpose of misleading the defendant, and to induce it to enter into the contracts of insurance, and that the defendant was in fact misled thereby in particulars where it would not have entered into said insurance contracts if the said Ella D. Smith had given true statements with reference thereto."

"If you find and believe from the evidence, as hereinbefore instructed, that the deceased, Ella D. Smith, made certain false and fraudulent statements and representations, and concealments, as alleged in defendant's answer, and if you find and believe from the evidence that the same were false and fraudulent, and that the said deceased Ella D. Smith knew at the time the said statements and concealments, or either, if any were made, were false and fraudulent, and that she made the same for the purpose of misleading the defendant and to induce it to enter into the contracts of insurance in question, and if you further find and believe from the evidence that the said insurance company was in fact misled thereby in particulars where it would not have entered into such insurance contracts, if the said Ella D. Smith had given true statements with reference thereto, if you so find, then you will find for the defendant."

As no error is predicated upon the giving of these instructions, by counsel for defendant we will assume in reviewing the questions raised that they state the law correctly. The theory of the parties and the trial court, as disclosed by these instructions, undoubtedly was that, in view of the provision contained in the policies to the effect that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, even if it were shown that some of the answers of the insured were not strictly true, this of itself would not be sufficient to avoid the policies, unless the defendant also showed to the satisfaction of the jury that the answers were not only untrue, but that they were made fraudulently and with the intent to deceive the company. This view seems to be in harmony with the ruling of this court in Continental Casualty Co. v. Owen, 38 Okla. 107, 131 Pac. 1084. In that case the policy belonged to a class to which the statute was applicable, which provides that statements made in the application shall, in the absence of fraud, be deemed representations and not warranties. The policy was contested upon substantially the same grounds as the policies herein. It was held that in an action upon such a policy where the falsity of statements made by the insured in his application for insurance is relied upon for a defense, the burden is upon the insurer to show that such statements were made willfully and with intent to deceive, and must have been relied upon by the insurer, and that the materiality of the statements and the intent of the insured to deceive are for the jury. In Mutual Life Ins. Co. v. Morgan, 39 Okla. 205, 135 Pac. 279, it was held:

"Representations and statements in an application for life insurance, not strictly true, will not avoid the policy issued upon the application, unless they are material and substantially untrue, where they do not amount to warranties."

Inasmuch as the trial court without objection submitted to the jury the issue as to whether or not the insured in her application made statements which were false knowing them to be false, with the intent to mislead the company as to her physical condition, this court is not at liberty to disturb the finding of the jury on that point, there being evidence adduced at the trial reasonably tending to sustain them. National Council of Knights and Ladies of Security v. Owen, supra, and the other cases cited by counsel for defendant, are not authorities in point to the contrary, for in each of these cases the parties by their contract plainly and unequivocally made the statements and questions and answers strict warranties. As was said in the opinion of the court prepared by Mr. Justice Hardy in the Owen Case:

"While it is true that warranties are not favored in the law, yet in a case where the language of the contract is plain and unequivocal, the court cannot refrain from giving to the contract of the parties the meaning which its plain and unambiguous language imports, and the question of their materiality does not enter into the case, for the parties by their contract have made them material."

In the case at bar the parties by their contract did not make the statements warranties, but on the contrary declared they, in the absence of fraud, shall be deemed representations. Such policies are contestable only for willful misrepresentation.

The contention of counsel for the defendant on the next proposition is that certain evidence offered upon the question of fraud is inadmissible for the reason that it tended to vary the terms of the written application for insurance and the written medical examination signed by the insured. We have examined the evidence objected to upon this ground and believe it to be admissible under the rule laid down in Shuler et al. v. Hall, 42 Okla. 325, 141 Pac. 280, as follows:

"Where an instrument is attacked for fraud, * * * all the circumstances and transactions leading up to and surrounding the execution of the instrument, as well as the motives and intentions that prompted the makers to execute it, may be shown by parol."

On their next assignment of error counsel contend that it was error for the trial court to exclude certain parts of the testimony of Drs. Cale and Woolsey concerning communication made to them by the insured while under their care in the Frisco Hospital at St. Louis and concerning certain communications to the same effect by a nurse connected therewith while the insured was so under treatment. As the testimony excluded consists of parts of the answers made by the witnesses to questions propounded to them in depositions which were taken previous to the trial, we have considerable difficulty in gathering from the statements thereof made by counsel in their brief, the precise testimony which they contend was erroneously excluded. It is conceded that by the terms of our privilege statute (section 5050, Rev. Laws 1910) a physician or sur-

geon is incompetent to testify without the consent of his patient, concerning any communication made to him by his patient with reference to any physical or supposed physical disease, or any knowledge obtained by personal examination of any such patient, "provided that if a person offers himself as a witness that is to be deemed a consent to the examination; also, if an attorney, clergyman, or priest, physician or surgeon on the same subject, within the meaning of the last three subdivisions of this section." Counsel for plaintiff concedes that notwithstanding the privilege statute, it is competent to prove by a physician or surgeon that he attended a certain person, the dates of his visits, the place where the treatment occurred, that the patient was discharged at a certain time, etc., but he says in effect: The only thing which the defendant was excluded from proving on the trial of this case was the nature of the disease for which insured was being treated, and the treatment given her, and the different communications which passed between her and the physicians and nurse with reference to her condition.

We have examined the record with considerable care, and believe that it justifies the foregoing statement of counsel as to the nature of the testimony excluded. In these circumstances, of course, the testimony objected to was properly excluded, unless the plaintiff waived the statutory privilege, as counsel for defendant contends. Counsel for defendant in their brief have divided this assignment of error into two "propositions," which they state as follows:

(1) "A waiver of the benefit of privileged communication between physicians and patient is to be predicated when the conduct of the claimant which placed the claimant in such a position, with reference to the evidence, that the injury to justice would be greater than the benefits to be derived by conserving the privilege."

(a) "To call witnesses to testify as to one's physical condition is a waiver of the privilege as to the knowledge acquired by physicians of the same condition."

In support of their first proposition counsel cite sections 2285, 2388, 2390, 2391, vol. 4, Wigmore on Evidence; and in support of the second proposition they cite section 2390, vol. 4, Wigmore on Evidence; Nelson v. Insurance Co., 110 Iowa, 600, 81 N. W. 807; Buffalo Loan, Trust & Safe Deposit Co. v. Knights Templar & M. M. A. Ass'n, 126 N. Y. 450, 27 N. E. 942, 22 Am. St. Rep. 839.

If we understand counsel's first proposition, it amounts to this: The privilege must be deemed waived where the injury that would inure to the relation by the disclosure of the communication must be greater than the benefit thereby gained for the correct disposal of litigation. We find no authority for this proposition in the authorities cited. Professor Wigmore (section 2285) does say that one of the four fundamental considerations for the establishment of a privilege is that:

"The injury that would inure to the relation by the disclosure must be greater than the benefit thereby gained for the correct disposal of litigation."

But we understand the text to be intended more for the guidance of the Legislature in considering the enactment of privilege statutes than for the court in construing such statutes after their enactment.

As the Legislature of this state has already enacted a privilege statute, the chief policy of which, it seems to us, is to encourage full and frank disclosures to the attending physician or surgeon, by relieving the patient from the fear of embarrassing consequences, the question of dealing justly as between the patient and third parties is of secondary consideration.

The argument of counsel on the second proposition of this assignment of error is that while the statute may be intended to protect persons in the confidential disclosures that may be necessary in regard to their physical condition, it was not intended to close the lips of physicians where the patient voluntarily publishes the facts to the world. Counsel nowhere in their brief have pointed out the precise voluntary disclosures which they claim constitute a waiver. Certainly, neither the insured nor her personal representative offered themselves as witnesses. So it must be that counsel rely for a waiver upon the testimony of several lay witnesses offered by the plaintiff in rebuttal, which counsel said tended to prove that the insured did not die of cancer. By the express terms of the statute (section 5050, Rev. Laws 1910) physicians and surgeons are incompetent to testify without the consent of their patient with respect to two subjects: (a) Any communication made to him by his patient with reference to any physical or supposed physical disease; and (b) any knowledge obtained by personal examination of any such patient. And this consent is given according to the terms of the proviso only in the event the patient offers himself as a witness and voluntarily testifies on the same subject. C., R. I. & P. v. Hughes, 64 Okla. 74, 166 Pac. 411.

In the case of Arizona & N. M. Ry. Co. v. Clark, 235 U. S. 669, 35 Sup. Ct. 210, 59 L. Ed. 415, L. R. A. 1915C, 834, the Arizona privilege statute, which is identical in meaning with our own, was under consideration. A material part of the injury complained of was the loss of the sight of plaintiff's left eye; and because this was set forth in the pleadings, and upon the trial plaintiff testified personally in regard to his injuries, mentioning the loss of sight and pain in the eye, and called as a witness a nurse who attended him after the accident, and who testified as to the condition of the eye, it was insisted that plaintiff in effect consented to the examination of the physicians with respect to his condition. Mr. Justice Pitney, who delivered the opinion for the court, in denying this contention, says:

"We would have to ignore the plain meaning of the words in order to hold, as we are asked to do, that the testimony of other witnesses offered by the patient, or the testimony of the patient himself with reference to other matters than communications to the physician, or any averments contained in the pleadings, but not in the testimony, amount to a waiver of the privilege. The enactment contemplates that the physician receives in confidence what his patient tells him, and also what the physician learns by a personal examination of the patient. It contemplates that the patient may testify with reference to what was communicated by him to the physician, and in that event only it permits the physician to testify without the patient's consent."

Counsel for plaintiff calls our attention to the clause of the policies which provides that the policy shall be incontestable from its date, except for nonpayment of premiums, and insists that by virtue thereof it was incumbent upon the insurer to make such inquiries as it deemed proper touching the truthfulness of the answers of the insured prior to the delivery of the policy, and having failed to do so, it is now precluded from contesting the policy except for nonpayment of premiums. There is certainly some respectable authority sustaining this contention, but in view of the conclusions we have reached on the assignments of error presented for review, we do not deem it necessary to pass upon that question at this time. We may say, however, in passing, that where the insurer issues such a policy and fails to make such extrinsic investigation until more premiums have been paid and the insured has left the world, there are no considerations of morality or equity to urge the court to be astute to discover grounds for waiver of the privilege statute in favor of the company.

Finding no error in the record, the judgment of the court below is affirmed.