# JOHN FARM AND ANOTHER v. ROYAL NEIGHBORS OF AMERICA.[1]

February 27, 1920.

No. 21,482.

**Mutual benefit insurance — false answer in examination — question for jury.**
1. The evidence made the question of whether the assured had made the misrepresentations alleged a question for the jury.

**Section 3300 inapplicable since Fraternal Insurance Act of 1907.**
2. Chapter 345 of the Laws of 1907 established a complete code for the government and regulation of fraternal beneficiary associations, and superseded all prior statutes relating to such associations, and section 3300, G. S. 1913, being section 1623, R. L. 1905, does not apply to them.

**Insurance contract avoided by false answers.**
3. The contract warranted the answers to the questions in the medical examination to be literally true. The answers in controversy related to matters material to the risk, and if they were made and were not true, their falsity avoided the contract.

**Charge to jury error.**
4. An instruction to the effect that, although false answers were knowingly made, the plaintiffs were entitled to recover, unless the matters misrepresented increased the risk, was error.

Action in the district court for St. Louis county to recover $1,000 upon defendant's benefit certificate. The case was tried before Fesler, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $1,102.50. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*Benjamin D. Smith* and *John H. Norton,* for appellant.

*Lathers & Hoag,* for respondents.

TAYLOR, C.

Action to recover the amount of a benefit certificate issued by defend-

[1]Reported in 176 N. W. 489.

145   M—13.

ant, a fraternal beneficiary society, on November 21, 1914, to Frances Farm, who died June 26, 1917. Defense that the contract was void because the assured had falsely stated, in the medical examination made a part of her application for the insurance, that she had not consulted a physician in regard to a personal ailment within the preceding seven years; that she had never been an inmate of a hospital, and that she had never had appendicitis nor any disease of the genital organs. The jury returned a verdict for the plaintiffs, and defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

1. Defendant contends that the evidence conclusively established that Mrs. Farm had made the misrepresentations alleged.

Among more than 150 printed questions to be answered by the applicant in the medical examination, were questions asking whether she had consulted a physician within the last seven years in regard to a personal ailment; whether she had ever been an inmate of a hospital; whether she had ever had appendicitis, and whether she had ever had any disease of the genital organs. The medical examination shows that each of these four questions was answered "no."

It appeared without dispute that about a year before making this application Mrs. Farm had undergone an operation, at St. Mary's Hospital in the city of Duluth, for double salpingitis in which both Fallopian tubes and one of her ovaries had been removed. It also appeared that about three years earlier she had undergone an operation for appendicitis at St. Luke's Hospital in the same city. The plaintiffs do not claim that the above answers were true, but claim that the evidence made the question of whether the assured gave those answers a question for the jury.

The examination was made by defendant's physician who asked the questions and wrote the answers. The assured is dead, and her testimony as to the questions she was asked and the answers she gave could not be had. From the testimony of the examining physician, it is reasonably clear that the answers were neither read to her nor by her after they were written. This physician, Dr. Graham, gave his testimony with commendable frankness, without attempting to color the facts in favor of either party. He had no recollection of this examination, and only knew that he had made it from the fact that he recognized his own handwrit-

ing on the paper produced by defendant. He had made many such examinations. He stated on cross-examination that he never read the answers to an applicant after they were written and had never seen an applicant read them himself. He also stated that where the applicant was known to him and appeared to be healthy, he quite often trusted to his own knowledge and observation, and wrote the answers to more or less of the questions, without asking the applicant to answer them. He had known Mrs. Farm prior to the examination, but remembered nothing concerning the examination.

Question No. 19 was as follows: "A. Have you ever undergone a surgical operation? B. If so, give cause, date and nature of operation. C. Was recovery complete?" It was admitted that the supreme recorder, if present, would testify that these questions were not answered when the application was first received by the supreme officers, and that they returned the application to the local lodge to have them answered. The answer "yes" now appears after "A," and the answer "see letter," after "B." It was admitted that the supreme recorder would further testify that these answers were written by a clerk in the supreme office after the application had been returned by the local lodge with the following slip attached to the inside thereof:

"John Farm ........... 500 ........... Husband
"Vernon Farm ........ 500 .............. Son
"Beneficiaries.
"Slight operation on cervix after childbirth—all successful."

There is no testimony whatever as to whether the application, when return, was or was not accompanied by letter. It was sent back to the local lodge to have the questions under No. 19 answered. It was returned with no answers inserted after these questions, but the notations made in the supreme office and the issuance of the certificate indicate that a letter had been received which satisfied the supreme officers. Defendant insists that the slip above mentioned is that letter. Plaintiffs insist that the slip is not a letter, and that the expression, "see letter," would not be used by the supreme officers, if the reference was merely to the slip attached to the application. This slip gave the names of the beneficiaries and the amounts which each should receive. At the bottom a minor operation was mentioned followed by the words: "All suc-.

cessful." This statement at least does not exclude the supposition that other operations had been made known. The inference that the notation, "See letter," under question No. 19, referred to some letter and not to the slip is, at least, as probable as the inference that it referred to the slip. The testimony of the examining physician, and the uncertainty as to what information had been given defendant concerning the operations which Mrs. Farm had undergone, clearly made the question of whether she had made the alleged misrepresentations a question for the jury. Mattson v. Modern Samaritans, 91 Minn. 434, 98 N. W. 330; Olsson v. Midland Ins. Co. 138 Minn. 424, 165 N. W. 474; Zimmerman v. Bankers Casualty Co. 138 Minn. 442, 165 N. W. 271; Clark v. North American Union, 179 Mich. 131, 146 N. W. 336.

2. The contract expressly stipulated that each of the statements and answers in the application was warranted to be literally true; that the literal truth of each was a condition precedent to any binding contract, and that if any of them were untrue the benefit certificate should be void.

Section 1623 of the Revised Laws of 1905, being section 3300 of the General Statutes of 1913, provides:

"No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss."

Plaintiffs contend that this statute applies in the present case, and that the evidence made the question of whether the representations were made with intent to deceive, and the question of whether the matter misrepresented increased the risk of loss, questions for the jury. Defendant contends that this statute does not apply to fraternal beneficiary associations, and that the stipulations in the contract made the answers to the questions in controversy strict warranties, and that they must be given effect as such.

Chapter 345, p. 469, of the Laws of 1907, being sections 3537 to 3567 inclusive of the General Statutes of 1913, established a complete code, regulating and governing fraternal beneficiary associations and the contracts for insurance made between such associations and their members, and expressly repealed all acts and parts of acts inconsistent therewith.

This act, with amendments not here material, is still in force. Section 4, p. 490, of this act, being section 3540, G. S. 1913, provides:

"Except as herein provided, such association shall be governed by this act and shall be exempt from all provisions of the insurance laws of this state not only in governmental relations with the state, but for every other purpose, and no law hereafter passed shall apply to them, unless they be expressly designated therein."

Where a new statute, not in the form of amendments to prior statutes is complete in itself, and shows that the legislature intended to substitute its provisions for those previously in force, and intended the new statute to prescribe the only rules governing the subject matter of the legislation, it supersedes all prior legislation in respect to such subject matter, and repeals all prior laws insofar as they apply thereto. Nicol v. City of St. Paul, 80 Minn. 415, 83 N. W. 375; School District No. 1 of Clay County v. Eckert, 84 Minn. 417, 87 N. W. 1019; State v. Jensen, 86 Minn. 19, 89 N. W. 1126; Clark v. Baxter, 98 Minn. 256, 108 N. W. 838; State v. Minnesota Tax Commission, 117 Minn. 159, 134 N. W. 643; Aaberg v. Minnesota Commercial Men's Assn. 143 Minn. 354, 173 N. W. 708.

In Louden v. Modern Brotherhood of America, 107 Minn. 12, 119 N. W. 425, a case in which the death occurred before the enactment of the law of 1907, it was held that section 1616 of the Revised Laws of 1905, being section 3292 of the General Statutes of 1913, found under the heading: "Provisions Common to All Companies," and which provided that neither the application of the insured, nor the by-laws of the company, should constitute a part of the contract, unless incorporated in or attached to the policy, did not apply to fraternal beneficiary associations under the law as it existed prior to 1907. In Aaberg v. Minnesota Commercial Men's Assn. 143 Minn. 354, 173 N. W. 708, it was held that chapter 156, p. 181, of the Laws of 1913, established a complete code for the government and regulation of health and accident insurance, and that section 3292, G. S. 1913, above mentioned, did not apply to that class of insurance. The statute of 1907, regulating and governing the insurance contracts of fraternal beneficiary associations, completely covers the entire subject matter, and its express provisions leave no doubt that the legislature intended this act to prescribe the only rules applicable to and governing such insurance. We therefore hold that section 1623 of the

Revised Laws of 1905, being section 3300 of the General Statutes of 1913, does not apply to the insurance contracts of fraternal beneficiary associations.

The representations in controversy were made warranties by the express terms of the contract. They related to matters material to the risk, and, if they were made and were not true, their falsity avoided the contract as a matter of law. Cerys v. State Ins. Co. of Des Moines, 71 Minn. 338, 73 N. W. 849; Mattson v. Modern Samaritans, 91 Minn. 434, 98 N. W. 330; Taylor v. Grand Lodge A. O. U. W. of Minnesota, 96 Minn. 441, 105 N. W. 408, 3 L.R.A.(N.S.) 18; O'Connor v. Modern Woodmen, 110 Minn. 18, 124 N. W. 454, 25 L.R.A.(N.S.) 1244; Johnson v. National Life Ins. Co. 123 Minn. 453, 144 N. W. 218, Ann. Cas. 1915A, 458; Silverstein v. Knights & L. of S. 129 Minn. 340, 152 N. W. 724; Olsson v. Midland Ins. Co. 138 Minn. 424, 165 N. W. 474; Zimmerman v. Bankers Casualty Co. 138 Minn. 442, 165 N. W. 271.

The court charged the jury:

"If such denials or representations were made and were false and decedent knew they were false, but such denials or representations did not increase the risk against which the defendant insured the decedent, then the plaintiffs can recover."

This instruction is not modified nor its effect lessened by anything else in the charge which was very brief. It does not even apply the rule prescribed by section 3300, G. S. 1913. In effect it directed the jury to find a verdict for the plaintiffs, unless they found as a fact that the misrepresentations had increased the risk. If the assured knowingly made the misrepresentations charged, the contract was void and the jury should have been so instructed. Whether the misrepresentations had really been made was the only question for the jury to determine. If made they were in respect to facts which were material as a matter of law, and whether they increased the risk should not have been submitted to the jury to determine as a question of fact. For the errors above indicated a new trial must be and is granted.

Order reversed.