[No. 3342.   Feb. 21, 1930.]

[Rehearing Denied April 11, 1930.]

GALLEGOS v. KANSAS CITY LIFE INS. CO.

[286 Pac. 420.]

Reid, Hervey & Iden, of Albuquerque, for appellant.

John Venable, of Albuquerque, for appellee.

OPINION OF THE COURT

WATSON, J.

This appeal is from a judgment in favor of the beneficiary in a policy of life insurance.

The material facts here stated have been extracted from the findings or from appellant's statement.

On April 28, 1926, appellant's soliciting agent took from the assured, appellee's wife, an application and a "sup-

plementary application or non-medical declaration," upon appellant's printed forms. He told her that no medical examination was necessary; supposing at the time that he could procure insurance for her on the "non-medical" plan. Discovering later that married women were not thus insured, he procured appellant's local medical examiner to make up a different application, including the declaration to be made by an applicant to the examiner, and to make and sign a medical report. This was all done without the knowledge of the assured, and, so far as the record shows, she died in ignorance of it. No medical examination in fact took place. The application signed by the assured was never presented to appellant, and is said to have been lost. It is not shown who signed the name of the assured to the application and declaration forwarded; but it is certain that she did not.

The policy was issued by appellant in reliance upon the truth of the fictitious answers supposedly made and signed by the assured, and the false report of the examiner as to her physical condition. It was delivered to the assured on May 8th, and attached to it was a photostatic copy of the declarations and medical report constituting the application. By the terms of both application and policy proper, the former was to be deemed a part of the contract. A few days after the delivery the assured consulted a physician, was taken to a hospital, underwent an operation on May 29th, another on June 28th, and died November 8th. The trial court was unable to find the exact cause of death or nature of illness, and refused to find that, on the date of delivery of the policy, the assured was not in good health.

There was no evidence as to whether the assured ever read the policy with its attached copy of application. The policy expressly authorized the agent to collect the first premium, and he advised the assured, at the time of making the application, that payment was not then necessary. On May 19th appellant, having learned that the assured was in a hospital and contemplated an operation, wrote her, declaring the policy null and void. On May 25th appellee mailed his check for the premium to the agent who had obtained the application, but it was not accepted.

The policy contains this provision:

"Unless the first permium has already been paid in cash, then this policy shall not take effect until the first premium hereon has been paid and this policy delivered to the applicant within thirty days from the date hereof, or unless the applicant is in good health at the time of its delivery."

■ Upon it appellant bases two contentions:

(1) "The policy is void because not delivered to the assured while she was in good health." (2) "The policy was cancelled before it became effective."

Both must be overruled.

Appellant endeavored to prove and here argues that the assured was not in good health when the policy was delivered. The finding, however, is to the contrary, and it is supported by substantial evidence.

■■ The most important question arises out of the fraudulent conduct of appellant's agent and its medical examiner. Appellant does not claim that the assured was any party to it or had any actual knowledge of it. Its contention is that she might have obtained knowledge of it by reading the policy with the attached application; that it was her duty to read it; that the law will therefore impute to her knowledge of it; which knowledge made it her duty to repudiate the fraudulent acts done in her name and behalf.

Appellant cites as its leading case New York Life Insurance Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 844, 20 L. Ed. 934, where Mr. Justice Field, who delivered the opinion of the court, said:

"There is another view of this case, equally fatal to a recovery. Assuming that the answers of the assured were falsified, as alleged, the fact would be at once disclosed by the copy of the application, annexed to the policy, to which his attention was called. He would have discovered by inspection that a fraud had been perpetrated, not only upon himself, but upon the company, and it would have been his duty to make the fact known to the company. He could not hold the policy without approving the action of the agents, and thus becoming a participant in the fraud committed. The retention of the policy was an approval of the application and of its statements. The consequences of that approval cannot, after his death, be avoided."

As decisions approving that doctrine and following that case, appellant also cites Mutual Life Insurance Co. v.

Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202; 'Goldstone v. Columbia Life & Trust Co., 33 Cal. App. 119, 164 P. 416; Metropolitan Life Ins. Co. v. Freedman, 159 Mich. 114, 123 N. W. 547, 32 L. R. A. (N. S.) '298; Moriarity v. Metropolitan Life Ins. Co., 180 Ky. 207, 202 S. W. 630; Globe Reserve Mutual Life Ins. Co. v. Duffy, 76 Md.' 293, 25 A. 227; Eagle Star & British Ins. Co. v. Main, 140 Md. 220, 117 A. 571; Wilkins v. National Life & Accident Ins. Co., 23 Ga. App. 191, 97 S. E. 879.

The principle of these cases has not gone unchallenged. Much, if not more, authority is to the contrary. This matter need not be considered here, since the cases cited are distinguishable. In each the assured was either a party to or an instrument in securing a policy upon false declarations. In the Fletcher Case the effect of. false statements was sought to be overcome by showing that the assured had answered truly, and that, without reading, he had signed false answers put down by the agent of the insurer. The insurer was imposed upon through the negligence of the assured. Having been thus negligent, it was said to be his duty to read the policy with the attached copy of the application when delivery was made, and to repudiate the fraud done in his name and behalf.

In the case at bar there was no consciousness of a previous negligence. It is not contended that the assured stated anything falsely or failed to read what she signed. Not the slightest responsibility or complicity in the fraudulent transaction attaches to her. In such a case we cannot hold that there was any duty upon her when the policy was delivered to read it or the attached application. It might have been prudent to do so, in order to ascertain whether she was being in any manner imposed upon. But what reason had she to suspect that a reading would disclose imposition upon the insurer?

. Appellant contends that the minds of the parties did not meet and that, consequently, no contract eventuated. It is urged that the assured contemplated a policy on the "non-medical" plan, while the insurer contemplated another; that the assured contemplated herself as the subject-

matter, while the insurer contemplated the fictitious person described by the examiner. We are not impressed with the soundness of the contention. Wherein a policy on the "non-medical" plan would have differed from that issued is not shown. Nor was there any mistake as to the identity of the assured. Moreover, appellant's real defense is not any misapprehension as to the subject-matter of the contract. It is fraudulent representations or warranties inducing the contract. But, in this case, since appellee did not contribute either actively or negligently, the fraud is not hers. It is that of appellant's agents. Appellant's defense is defeated, not because it was not imposed upon, but because, as between it and the assured, it is estopped to repudiate its agents' acts. Being so estopped, the case must stand as though the application were true. If true, there is no ground for contending that the minds of the parties did not meet.

We thus find no error in the judgment. It will be affirmed and the cause remanded. It is so ordered.

BICKLEY, C. J., and SIMMS, J., concur.

PARKER and CATRON, JJ., did not participate.