(No. 5807.   February 8, 1933.)

JOSEPH JAMES TURNER, Respondent, v. THE PA-
CIFIC MUTUAL LIFE INSURANCE COMPANY
OF CALIFORNIA, Appellant.

[20 Pac. (2d) 210.]

Richards & Haga, for Appellant.

Hawley & Worthwine, for Respondent.

GIVENS, J.—October 7, 1929, appellant issued to respondent its so-called "Non-Cancellable" income policy, providing indemnity for loss of life or time through accidental means, or loss of time by sickness.

July 3, 1930, appellant sought to cancel the policy because of claimed misstatements in the written application and medical examination attached to the policy and made part of it, and this suit was instituted to recover $900 with interest, for total loss of time due to sickness from April 14 to September 15, 1930.

Both appellant and respondent have discussed the word "Non-Cancellable" on the face and in the body of the policy, and whether there is a distinction between "Non-Cancellable" and "incontestible."

The policy provides that "This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance except as it may be modified by the Company's classification of risks or premium rates . . . . ," which latter incidents are in no way involved herein.

"Non-Cancellable" is not defined in the policy, and in view of the conclusion reached, it is unnecessary to discuss or consider the "Non-Cancellable" feature.

Appellant alleged in the answer and cross-complaint that respondent falsely answered question 15, part I of the appli-

cation, as to whether respondent had ever had any bodily infirmity; questions 5F and 5G of part II of the application, which asked if he had ever had liver, kidney or bladder disease, etc., or colic, gravel, etc., to which questions respondent answered "No"; question 6, part II, which inquired whether respondent had given full information about each disease mentioned in question 5, to which he answered "Yes"; and question 7, part II, which asked what injuries, illnesses and treatments or consultations with physicians he had had during the seven years preceding the application, with particulars of each, to which he answered "None," alleging that such statements were material to the risk, and relied upon by the company in issuing the policy.

The issue of fraud was tried before a jury, which returned a verdict for respondent, and the question of cancelation was presented to the court for decision, who made findings of fact and conclusions of law to the effect that there was no fraud on the part of respondent in answering the questions, and refused to cancel the policy.

█ Respondent's evidence was to the effect that he told Dr. Forney, the examining physician, that in February, 1929, he was taken to the hospital in Boise, where he was examined by Dr. Stone, who also called Dr. Pittenger into consultation but that neither of the doctors told him what was the matter with him; that he did not know what was the matter with him at that time. That he told Dr. Forney to call Dr. Stone, get the necessary information, and then fill in the answers. Appellant's witnesses, Burford and Dr. Johnson, testified that respondent told them when he was in the hospital in San Francisco, suffering from the illness for which indemnity is sought, that he had had a kinked ureter in February, 1929.

While respondent admitted having told Dr. Johnson in 1930 that he had had a kinked ureter in February, 1929, the record discloses that the first time he knew what he was suffering from was January or February, 1930, when Dr. Laubaugh told him that he had a kinked ureter. Thus respondent did not know at the time of the medical exami-

nation or the delivery of the policy October 7, 1929, that such was the case, and thus it was merely a circumstance to be taken into consideration by the jury in their consideration of the case, particularly with reference to the retention of the policy hereafter discussed.

The majority rule is that oral evidence is admissible on the part of the insured to prove that he told the truth to the agent or medical examiner, but that the agent or medical examiner failed to record the correct answers. (*Bullock v. New York Life Ins. Co.*, 182 Minn. 192, 233 N. W. 858; *Blades v. Farmers' & Bankers' Life Ins. Co.*, 116 Kan. 120, 225 Pac. 1082; *American Bankers' Ins. Co. v. Hopkins*, 67 Okl. 150, 169 Pac. 489; *Simmons v. Washington Fidelity Nat. Ins. Co.*, 136 Or. 400, 299 Pac. 294; *Mid-Continent Life Ins. Co. v. Parker*, 181 Ark. 213, 25 S. W. (2d) 10; *Suravitz v. Prudential Ins. Co. of America*, 224 Pa. 582, 91 Atl. 495, L. R. A. 1915A, 273; *Panopoulos v. Metropolitan Life Ins. Co.*, 96 Pa. Super. Ct. 415; 32 C. J., pp. 1333, 1334, sec. 601; 4 Couch on Insurance Law, sec. 842u, p. 2784 et seq.) Thereby a question is presented for the jury (*Panopoulos v. Metropolitan Life Ins. Co.*, supra; *Suravitz v. Prudential Ins. Co. of America*, supra; *Farm v. Royal Neighbors of America*, 145 Minn. 193, 176 N. W. 489; *Lynch v. Germania Life Ins. Co.*, 132 App. Div. 591, 116 N. Y. Supp. 998; *American Bankers' Ins. Co. v. Hopkins*, supra; *Mutual Life Ins. Co. v. Boucher*, 83 Okl. 42, 200 Pac. 534; 33 C. J., sec. 866, p. 134; 4 Couch on Insurance Law, sec. 889j, p. 3042 et seq.), and the jury and the court have herein found as a fact on competent and admissible evidence that respondent told the truth, thus removing the ground of falsity of statement as avoiding the policy.

Appellant contends, however, that retention of the policy to which the application was attached is an approval by insured of the application, making him a participant in the fraud or mistake, and his failure to notify the insurer is fatal to the policy, citing: *New York Life Ins. Co. v. Fletcher*, 117 U. S. 519, 6 Sup. Ct. 837, 29 L. ed. 934;

*Bollard v. New York Life Ins. Co.,* 98 Misc. Rep. 286, 162
N. Y. Supp. 706; *Massachusetts Protective Assn. v. Allen,*
(D. C.) 54 Fed. (2d) 788; *Bostwick v. Mutual Life Ins.
Co.,* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, 67 L. R. A.
705; *Layton v. N. Y. Life Ins. Co.,* 55 Cal. App. 202, 202
Pac. 958; *Mutual Life Ins. Co. of N. Y. v. Hilton-Green,*
241 U. S. 613, 36 Sup. Ct. 676, 60 L. ed. 1202; *Stanulevich
v. St. Lawrence Life Assn,* 228 N. Y. 586, 127 N. E. 515;
*Goldstone v. Columbia Life & Trust Co.,* 33 Cal. App. 119,
164 Pac. 416; *Reynolds v. Atlas Acc. Ins. Co. of Boston,*
69 Minn. 93, 71 N. W. 831; *Satz v. Massachusetts Bonding
& Ins. Co.,* 243 N. Y. 385, 153 N. E. 844, 59 A. L. R. 606;
*DeRoy v. New York Life Ins. Co.,* (D. C.) 52 Fed. (2d) 894;
*Texas State Mutual Fire Ins. Co. v. Richbourg,* (Tex. Com.
App.) 257 S. W. 1089; *Franco v. New York Life Ins. Co.,*
53 Fed. (2d) 562; *Norton v. Gleason,* 61 Vt. 474, 18 Atl.
45; *Caruthers v. Kansas Mut. Life Ins. Co.,* 108 Fed. 487;
*Mutual Life Ins. Co. of N. Y. v. Powell,* 217 Fed. 565;
*Zeidel v. Connecticut Gen. Life Ins. Co.,* 44 Fed. (2d) 843.
Respondent cites the following cases as supporting a con-
trary rule: *Allen v. Phoenix Assur. Co.,* 14 Ida. 728, 95
Pac. 829; *Busboom v. Capital Fire Ins. Co.,* 111 Neb. 855,
197 N. W. 957; *Olsson v. Midland Ins. Co.,* 138 Minn. 424,
165 N. W. 474; *Welch v. Fire Assn. of Philadelphia,* 120
Wis. 456, 98 N. W. 227; *Schmitt v. Massachusetts Protective
Assn.,* 170 Minn. 60, 212 N. W. 5; *State Ins. Co. v. Taylor,*
14 Colo. 499, 24 Pac. 333, 20 Am. St. 281; *Bank Sav. Life
Ins. Co. v. Butler,* 38 Fed. (2d) 972; *Gallegos v. Kansas
City Life Ins. Co.,* 34 N. M. 579, 286 Pac. 420; 5 Cooley's
Briefs on the Law of Insurance, 2d ed., p. 4135; *Davern v.
American Mutual Liability Ins. Co.,* 241 N. Y. 318, 150
N. E. 129, 43 A. L. R. 522.

Paragraphs IV and V of the cross-complaint follow:

"That the said answers so made in said application, to
Question 15 in part I, and to Questions 5F, 5G, 6 and 7 in
part II, were wilfully false when made and known so to
be by the said plaintiff when the same were made, and the
said plaintiff was not at that time free from bodily in-

firmity and from an unsound condition physically, and prior to that time had diseases of the bladder, kidneys, and colic and other diseases, and had consultations with physicians, and had had illnesses during the last seven years preceding said application, and had, in fact, been confined to a hospital with bladder and kidney disease in February, 1929, and on other occasions during the preceding seven years.''

''That the said statements so made by the said plaintiff, Joseph James Turner, were material to the risk and were relied upon and believed by this defendant in issuing the said policy, and the said policy was obtained by plaintiff from defendant because of the false statements so made by him, and because of the fraud so practised by him, as aforesaid, upon the said defendant, and the said defendant would not have issued the said policy had it known before issuing said policy the facts regarding plaintiff's previous illnesses and diseases and the true condition of plaintiff and the falsity of the said statements so made by him.''

Thus while appellants alleged in the cross-complaint that the statements were false and material, they did not allege that they were made with intent to deceive.

Question 17, part I, did not have the effect of stating that every false statement materially affected the acceptance of the risk or the hazard assumed by the company. It said: ''*if* such answer is made with intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.''

Conceding, without deciding, appellant's theory of the applicable law to be correct, and that the company had the right to determine what answers materially affected the acceptance of the risk or the hazard assumed by the company, it was not, by its own interpretation, the mere answer ''None'' to question 7 that it contends was material. It was the fact that it claims Dr. Stone diagnosed respondent's ailment as renal colic or a kinked ureter; that respondent knew this, and should have so stated, and that if he had, no policy would have issued, as witness the question asked

of, and answered by, the witnesses Burford, Groton, Urich and Marshall, in substantially these words:

"Q. State what your action would have been had his answer to that question indicated that in February, 1929, he had been confined in St. Alphonsus hospital at Boise, Idaho, for three days, and had been treated by Dr. H. Stone, whose diagnosis was renal colic or a kinked ureter?

"A. I would have declined his application."

In other words, the answer they state would have been material was not what respondent or Dr. Stone then knew, or anything the evidence shows that respondent answered, or could have answered with his knowledge. The testimony of Burford and Dr. Johnson above referred to merely presented a conflict in the evidence.

Under the doctrine of *Russell v. New York Life Ins. Co.,* 35 Ida. 774, 209 Pac. 273, question 7 was merely a preliminary question, and even if respondent had answered "Yes," the policy probably would have been issued, since Drs. Stone and Pittenger testified as follows:

"Q. And state whether or not you told Mr. Turner what was the matter with him?

"A. I told him I didn't know. I don't recollect what Dr. Pittenger told him.

"Q. I will ask you to state whether or not at that time you made any statement to Joe Turner as to the likelihood of recurrence of his trouble?

"A. Well, I told him I didn't know what the trouble was, and if he had another recurrence of this sort of thing we could probably look into it further at that time.

"Q. Well, what did you tell him, if anything, about the probability of recurrence of that trouble?

"A. Well, I told him that it probably—I don't remember what I did tell him about it; I know I told him I didn't know what the matter was, and I don't know whether I told him about the probability of recurrence or not."

When paraphrased, the language used in *Russell v. New York Life Ins. Co., supra,* is applicable.

"Let us suppose that true answers had been made to these questions. Undoubtedly an inquiry would have followed. From whom would information have been sought? Dr. *Stone* would have been named as the physician consulted and . . . . Dr. *Stone* would have been questioned. We have Dr. *Stone's* testimony before us and the substance thereof has been stated. Can it be thought that if he had been interviewed when this application was pending his answers would have differed materially from what he said on the trial of this case? If not, then the insurance contract would have followed. That this contract would have so resulted from true answers seems to us to be settled beyond question by the record, and it then follows that appellant was not misled to its injury, if it was misled at all, by the untrue answers made in the application. In this situation the questions and answers were not material to the risk. . . . .

"Question No. 7 clearly is a preliminary question, the answer to which in no event could afford ground for final action upon the application. If it were answered truly there is a possibility of its developing matter that would be very material to the risk, but, as has been pointed out already, if the answer had been true in this case nothing would have developed that would have been material to the risk according to the test above stated." (Italics indicating paraphrasing ours.)

Under appellant's theory of estoppel by retention of the policy with false answers, respondent being charged with knowledge of such answers though he had not read the answers, he would not be estopped unless he knew the answers to be false.

The medical application requires the answers to be written personally by the medical examiner (marginal requirement): "Answers must be explicit and in the handwriting of the Examiner Check marks or dashes do not constitute an answer."

If respondent honestly thought that after he left Dr. Forney, having told him to call Dr. Stone, that Dr. Forney

called Dr. Stone, and decided the consultation with Dr. Stone was not of sufficient importance to require an affirmative answer, or that he failed to call Dr. Stone and just put in "None," considering it of no importance, to the substance of all of which respondent testified; at most, it only presented a question for the jury, and was not such a situation as demanded an absolute holding as a matter of law of conclusive estoppel.

While appellant relies upon *New York Life Ins. Co. v. Fletcher, supra,* in a later construing case, *Mutual Life Ins. Co. v. Hilton-Green, supra,* the supreme court made this statement:

"Construed in most favorable light possible, the above quoted incorrect statements in the application are material representations; *and nothing else appearing* if known to be untrue by assured when made, invalidate the policy without further proof of actual conscious design to defraud." (Italics ours.)

We believe that the italicized words were intentionally inserted in order that in a case where *something else appears* the insured will not be precluded from recovery. Furthermore, it says: "if known to be untrue," which was not the situation herein.

Many of the cases cited by appellant on the retention feature may be distinguished from the case herein. For example:

*New York Life Ins. Co. v. Fletcher, supra,* in which the assured was required to make and sign the application.

*Bollard v. New York Life Ins. Co., supra,* containing a statement that insured had read the answers.

*Massachusetts Protective Assn. v. Allen, supra.* A Colorado statute making statements to the agent ineffectual unless contained in the application controls this holding.

*Bostwick v. Mutual Life Ins. Co., supra.* This was not a similar action.

*Layton v. New York Life Ins. Co., supra.* The insured over his own signature declared that he had read each answer and that they were full, complete and true.

In *Satz v. Massachusetts Bonding & Ins. Co., supra,* the statements were warranted to be true.

*Texas Mutual Fire Ins. Co. v. Richbourg, supra.* The statements were warranted to be true.

*Franco v. New York Life Ins. Co., supra,* may be distinguished because the answers in that case were found to be false.

*Norton v. Gleason, supra.* The revocation was attempted by the insured.

*Caruthers v. Kansas Mutual Life Ins. Co., supra.* This case recognizes an exception to the rule in case of mistake, and the answers were warranted to be true.

*Mutual Life Ins. Co. of N. Y. v. Powell, supra.* There was actual fraud in this case, and the answers were warranted to be true.

*Zeidel v. Connecticut Gen. Life Ins. Co., supra.* The insured knew the statements to be false.

As the case stands, there was competent evidence from which the jury concluded that respondent made true answers, which, through mistake, inadvertence or neglect of Dr. Forney to call Dr. Stone, were incorrectly recorded by Dr. Forney in the application, and since also the jury properly considered whether respondent was estopped from asserting such true answers, and decided in effect that he was not, the appellant is bound under the terms of the policy, and the judgment should be, and is, affirmed.

Costs to respondent.

Budge, C. J., Morgan and Holden, JJ., and Babcock, D. J., concur.

Petition for rehearing denied.