## NEW YORK INS. CO. v. CLARK.

No. 15248—Opinion Filed March 31, 1925.

Rehearing Denied May 5, 1925.

1. **Insurance — Action on Life Policy—Defense—False Statements in Application.**

Where a policy of life insurance provides that all statements made by the insured shall, in the absence of fraud, be construed as representations and not warranties, in order for representations made by the insured in an application to avail the insurer as a defense, it must show, not only that the statements were not true, but that they were willfully false, fraudulent, and misleading and made in bad faith.

2. **Trial—General Verdict Supporting Judgment Though Incomplete Special Findings Adverse.**

Where the special findings do not embrace and cover all the issues in the case and those returned are not necessarily inconsistent with the general verdict, the fact that the incomplete findings are adverse to the successful party will not prevent a judgment in his favor, if the issues and facts included in the general verdict and upon which no special findings are made are sufficient to warrant a recovery.

3. **Insurance—Validity of Life Policy—Immaterial Misrepresentations in Application.**

Representations and statements in an application for life insurance, not strictly true, will not avoid the policy issued upon the application, unless they are material and substantially untrue, where they do not amount to warranties.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Washita County; Thomas A. Edwards, Judge.

Action by Tuila Clark against the New York Life Insurance Company. From the judgment in favor of the plaintiff, the defendant appeals. Affirmed.

Wilson, Tomerlin & Threlkeld (Louis H. Cooke, of counsel), for plaintiff in error.

Massingale & Duff, for defendant in error.

Opinion by FOSTER, C. This action was

brought by the defendant in error against the New York Life Insurance Company, plaintiff in error, to recover upon a policy of insurance issued upon the li.e of Mose F. Clark. The defendant in error was the mother of the insured, and the beneficiary named in the policy. The parties will be hereinafter designated as plaintiff and defendant, as they were in the trial court.

The defendant in its answer admitted the issuance of the policy and the death of the insured, but relied for a defense to the action upon untruthful answers to qu.stions propounded by its medical examiner, wherein it is charged that the said Mose F. Clark, falsely and with the intent to deceive the de endant, stated that he had fully recovered from the effects of a fractured hip, and that he had not consulted any physic.an within five years next previous to the examination, except Dr. Wells of Oklahoma City; that the defendant issued the policy of insurance relying upon the truthfulness of the answers contained in the written application and the written answers to the questions propounded by the medical examiner; that the representations made by the insured were false, fraudulent, and untrue, and made with a fraudulent intent.

A reply was filed by the plaintiff denying the allegations of new matter contained in the answer and further pleading estoppel. The case was tried to a jury and a verdict returned in favor of the plaintiff for the sum of $2,000. Special interrogatories were submitted to the jury by the court and answered as follows:

"Q. (1) Did Mose F. Clark represent in his written application for insurance that he had an accident or injury to his left hip in 1912? A. Yes. Q. (2) Did Mose F. Clark represent in said application that the duration of his accident was six months after which there had been a full recovery, except that he was lame, his left leg being one-half inch short? A. Yes. Q. (3) Did Mose F. Clark represent in his application for insurance that he had never within five years prior to Jan. 19, 1922, consulted any other physician than Dr. W. W. Wells, and for any malady, disease or ailment other than for a bilious attack? A. Yes. Q. (4) Did Mose F. Clark within five years next prior to Jan. 19. 1922, consult any physician other than Dr. W. W. Wells? A. Yes. Q. (5) What physicians other than Dr. W. W. Wells did Mose F. Clark consult within five years next prior to January 19, 1922? A. Dr. M. W. Sherwood. Q. (6) If you find that Mose F. Clark did consult within five years next prior to January 19, 1922, any other physician than Dr. W. W. Wells please state for what diseases and causes or ailments other than biliousness he consulted

such other physician? A. Abscesses. Q. (7) If you find that Mose F. Clark did consult within five years next previous to January 19, 1922, physicians other than Dr. W. W. Wells, and for any ailments other than biliousness, do you find that he knew or should have known such fact or facts at the time of making said application? A. Yes."

The defendant filed its motion for judgment on the special findings, notwithstanding the verdict, which was overruled, and judgment was entered for the plaintiff, to reverse which the de.endant has appealed.

The court gave the following general instruction number six. to the giving of which no exceptions were taken by either party:

"You are further instructed that if you find and believe from the evidence that the assured, Mose F. Clark, at the time he executed the application attached to and a part of the policy herein sued upon, submitted himself personally and his body as a living exhibit of his condition at that time and that the examining physician, George R. Tabor, detected the true physical condition of the said Mose F. Clark, then the plaintiff would be entitled to recover upon the policy herein sued upon, unless you should further find and believe from the evidence that the assured, Mose F. Clark, in his answer to questions in his said application attached to and a part of the policy herein sued upon willfully and intentionally, with the intent to deceive, falsely answered one or more of the questions in the foregoing instruction set out or any material part thereof. in which event the plaintiff would not be entitled to recover, notwithstanding the fact that the assured submitted himself personally and his body for the examination of George R. Tabor, medical examiner for the said defendant insurance company and your verdict should be for the defendant."

It will thus be observed that in the general instruction, above quoted, the question of fraudulent intent and bad faith of the insured in answering the questions propounded to him by the medical examiner was submitted to the jury for its determination.

It was the plaintiff's theory that the only logical inference to be drawn from the evidence was that Mose F. Clark, at the time he was examined for life insurance, honestly believed that he had recovered from an injury to the left hip received in a football game some ten years prior thereto. and that he therefore committed no fraud on the company in answering that he had fully recovered from such injury and offering himself as a fit subject for life insurance; that honestly believing he had recovered therefrom there was not willful intent to deceive

and mislead the defendant in answering that he had consulted no physician, or physicians, other than Dr. W. W. Wells within five years next previous to the examination.

It was the defendant's theory, on the other hand. that the insured at the time he submitted himself for examination was suffering from tubercular infection of the hip bone and lower vertabrae, resulting from an injury to the hip received in a football game some ten years previous, and that he died as a result of such injury, complicated by tubercular infection.

It is disclosed that the deceased, in the year 1916, and in the year 1920, was operated on in a hospital at Temple, Tex., by Dr. M. W. Sherwood, for abscesses in the region of the left hip and groin and considerable pus drawn therefrom, but the microscopic -examination made by Dr. Sherwood disclosed no signs of tuberculosis, and while it is true that Dr. Dean of Waco, Tex.. had pronounced the deceased as suffering from tuberculosis soon after the injury was received, no miscroscopic tests had been made at that time by him, and the fact remains that at the time Mose F. Clark was examined for life insurance, miscroscopic examinations had failed to reveal any tubercular infection.

There was evidence of a very positive character that the insured died of streptococcus infection, and that this disease could not have been produced by a fracture of the hip bone occurring ten or twelve years before, and that in the nature of things it must have been produced by an injury of more recent origin.

Under the issues presented by the pleadings in the case, the burden of proof was on the defendant to prove a willful intent to deceive on the part of the insured by the answers given to the interrogatories propounded by the medical examiner. Much of the evidence of the defendant's own witnesses was in hopeless conflict as to whether the deceased ever had tuberculosis prior to his examination for insurance.

If the insured at the time he was examined for life insurance concealed from the defendant the existence of a tubercular hip in the answers given by him to the questions propounded by the medical examiner with the fraudulent intent to deceive the insurance company, it is singular that so much of the evidence should tend to show that the insured died, not from the injuries he is charged with concealing, but from an entirely different malady.

The testimony of the medical examiner, Dr. Tabor, who examined the deceased for insurance, was to the general effect that the deceased attempted no concealment of his physical condition but submitted himself to examination and was examined thoroughly about the region of the injured hip; that he pressed upon the scars there found and no signs of disease appeared; that he ascertained from the deceased that he had received an injury to the left hip in a football game some ten years previous; that he had recovered from said injury completely in about six months thereafter; that it was his opinion, from the information elicited by him from the deceased, coupled with his own physical examination, that the deceased had then fully recovered from the injury, and no further questions were propounded touching the various treatments he had undergone in later years for abscesses developing from the fractured hip, it being the opinion of the medical examiner that he had entirely recovered from the injury, and that further questions were unnecessary.

There is neither allegation nor proof of a conspiracy between the deceased and the medical examiner to conceal from the insurance company the true condition of the applicant. The most that has been said by the defendant is that Dr. Tabor was careless in not observing the scars found on the applicant's hip at the time of the examination, and in not recognizing the process by which these scars were made. and if made by an operation at a subsequent time in the treatment of the injured hip. in not eliciting from the applicant the facts and circumstances in relation thereto. These facts and circumstances. we think, tend to negative any theory of intent to deceive on the part of the applicant. At the time of this examination in January, 1922, there had been no treatment made of the injured hip since the treatment administered and the operation made by Dr. Sherwood in February, 1921, during which time the deceased was regarded by the members of his family as being in sound health.

Microscopic examinations by Dr. Sherwood showed no signs of tuberculosis. Under these circumstances there was evidence reasonably tending to support the general verdict of the jury that the deceased was guilty of no willful intent to deceive or mislead the insurance company in stating that he had fully recovered from his injury, and that he had not consulted any physician other than Dr. W. W. Wells within five years next previous to the examination.

In Reserve Loan Life Insurance Company

v. Isom, 70 Okla. 277, 173 Pac. 841, it is said:

"Where a policy of life insurance provides that all statements made by the insured shall, in the absence of fraud, be construed as representations and not warranties, in order for representations made by the insured in an application to avail the insurer as a defense it must show. not only that the statements were not true, but that they were willfully false, fraudulent and misleading and made in bad faith."

See, also, Continental Casualty Co, v. Owen, 38 Okla. 107, 131 Pac. 1084; Mutual Life Insurance Co. v. Morgan, 39 Okla. 205, 135 Pac. 279; New York Life Insurance Company v. Stagg, 95 Okla. 252, 219 Pac. 362.

Fraudulent intent of an applicant in offering himself as an insurable risk and the materiality of an alleged false statement or concealment in his medical examination are questions of fact for the jury to determine, where the evidence is conflicting or where different inferences may be drawn therefrom. Springfield Fire & Marine Surety Co. v. Null, 37 Okla. 665, 133 Pac. 235; Shawnee Life Ins. Co. v. Watkins, 53 Okla. 188, 156 Pac. 181.

It is contended that the general verdict is in conflict with the special findings made by the jury and the latter must control. We are unable to agree with this contention. There was no special finding or return by the jury on the question of fraudulent intent or bad faith of the insured. This issue, however, was submitted to the jury in general instruction number six, hereinbefore set out, on which the jury returned its general verdict in favor of the plaintiff, involving a finding that the plaintiff was guilty of no bad faith in connection with his examination for insurance.

By its general verdict, the jury in effect found that the statements and representations made by the deceased in his application for insurance were not made fraudulently or in bad faith, and, inasmuch as the special findings did not include this issue, it was not inconsistent with the special findings.

It is true that the jury in its special findings found that the deceased knew that he had consulted Dr. Sherwood when he stated that he had consulted only Dr. Wells. In New York Life Insurance Co. v. Stagg, supra, it is said:

"The most favorable interpretation to be given to the special findings of fact, only shows that the statements were false. * * * In order to entitle a party to have judgment rendered in its favor notwithstanding the general verdict, there must be a conflict between the special findings and the general verdict, and where the special findings are adverse to the successful party, but do not embrace all the issues in the case, and are not necessarily inconsistent with the general verdict, the general verdict should stand."

In the third paragraph of the syllabus, it is said:

"Where the special findings do not embrace and cover all the issues in the case and those returned as not necessarily inconsistent with the general verdict, the fact that the incomplete findings are adverse to the successful party will not prevent a judgment in his favor if the issues and facts included in the general verdict and upon which no special findings are made are sufficient to warrant a recovery."

It is contended, however, that in the instant case the jury in their special findings, went a step further than the jury in the Stagg Case, and found not only that the statement of the insured that he had not consulted any physician other than Dr. Wells within five years next previous to the examination was false, but was known by the insured to have been false at the time he made the statement, and that in this situation the special findings must control.

There was no special finding by the jury, however, that the false statement alleged was upon a substantial and material matter. The general verdict of the jury involved a finding by it that there was no willful intent to deceive by any material statement or representation contained in the application.

In Mutual Life Ins. Co. v. Morgan, 39 Okla. 205, 135 Pac. 279, it is said:

"Representations and statements in an application for life insurance, not strictly true, will not avoid the policy issued upon the application, unless they are material and substantially untrue, where they do not amount to warranties."

Dr. Tabor testified that had the insured communicated to him all of the consequences following the injuries as disclosed by the treatments administered by Dr. Sherwood, he would still have considered the applicant as a proper subject for life insurance, if these treatments had revealed no tubercular infection.

The following question was propounded:

"Had you known of the extent of the injury and the consequences that followed that injury as detailed by the testimony of Dr. Sherwood, would you have considered him a

proper subject for life insurance at the time you examined him?"

In answer to the above question the doctor testified:

"Unless I had been advised that there was a specific abscess or tubercular abscess. If I had been advised that they were nonspecific or nontubercular abscesses and it had been two or more years since he had them and no trouble, I would not have rejected him had I been medical director for the company."

From this testimony it was within the province of the jury to find by its general verdict that the false statement found to have been made by the insured did not relate to a matter material to the risk, notwithstanding contrary testimony by Dr. Mazzuri, the medical director for the company. .

The case of New York Life Ins. Co. v. Stagg, to which reference has already been made, rules this case in all substantial respects. Defendant in its brief criticized the Stagg Case at some length, but the rule there announced is now the law of this state, and we feel no hesitancy in following it.

Upon a careful survey of the entire record we think the judgment of the trial court is correct and should be affirmed.

By the Court: It is so ordered.