## NEW YORK LIFE INS. CO. v. CARROLL.

No. 19862. Opinion Filed Jan. 26, 1932.

Wilson & Wilson (Louis H. Cooke, of counsel), for plaintiff in error.

Tomerlin & Chandler and Troy Shelton, for defendant in error.

McNEILL, J. This is an appeal from the district court of Oklahoma county. The parties will be referred to as they appeared in the trial court. Plaintiff instituted an action upon a policy of life insurance issued by the New York Life Insurance Company dated November 16, 1926, upon the life of Peter G. Weimer, who died on April 28, 1927, said policy being for the sum of $2,000.

The defense to the action on the insurance policy is fraud, concealment, and misrepresentation made by said deceased in his application for the insurance policy in controversy.

The defendant, among other things, alleged in substance and contends that the deceased concealed the fact that he was a sufferer of syphilis, when he appeared on November 10, 1926, before the company's medical examiner and answered the interrogatories propounded to him on forms submitted by the company; that some of the questions which were propounded and answered by the applicant, are as follows:

"7. B. Have you been under observation or treated in any hospital, asylum or sanitarium? Answer: No.

"9. Have you had rheumatism, gout, or syphilis? Answer: No.

"10. Have you consulted a physician for any ailment or disease not included in your above answers? Answer: No.

"What physician or physicians, if any, not named above, have you consulted or been examined or treated by within the past five years? Answer: None."

Also, that said decedent in his application stated that he was of the age of 40 years, and that said application contained, in part, the following agreement:

"That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium paid in full during his lifetime, and then only if the applicant has not consulted or been treated by a physician since his medical examination. * * *

"On behalf of myself, and of every person who shall have or claim any interest in any insurance made hereunder, I declare that I have carefully read each and all of the above answers, that they are each written as made by me, and that each of them is full, complete, and true, and agree that the company believing them to be true shall rely and act upon them.

"I expressly waive, on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or other person who has heretofore attended or examined me, or who may hereafter attend or examine me, from disclosing any knowledge or information which he thereby acquired."

Said defendant further alleged that the application together with the applicant's answers to the medical examiner were by photostatic copy attached to and made a part of the policy of insurance issued by the company, and that the company, relying upon the truthfulness of the applicant's answers to interrogatories propounded by the medical examiner, and believing him to be insurable and in good health, on November 16, 1926, wrote the policy of insurance in question, and thereafter caused the same to be transmitted to its agent, who delivered said policy, receiving from the applicant his note for $76, payable in 90 days from the date thereof, which was November 22, 1926, in settlement of the first premium on said policy of insurance; that on or about May 3, 1927, and within one year from the date of the issuance and delivery of the policy, the plaintiff, who was named as beneficiary in the policy of insurance, presented her claim to the defendant for the insurance in question; that Dr. Basil A. Hayes, of Oklahoma City, Okla., treated the insured in August, 1926, for influenza, and in November, 1926, for a cold, being less than one year from the date of the death of said deceased, which was on April 28, 1927; that the cause of the death of the deceased was coronary embolism, the common and ordinary sequence to the previous disease of syphilis, especially if the patient had contracted syphilis prior to the age of 50 years; that the statements made by the insured in his replies to the medical examiner of the company were false and untrue, in that the deceased had been under observation and treatment in St. Anthony's Hospital in July, 1924, for a period of at least two weeks, and that his statements that he had not consulted or been treated by a physician within five years from the date of making his application were false and untrue, and were known by him to be false and untrue, for that he had previously been treated by Dr. Basil A. Hayes, in August, 1926, for influenza, and had been treated by Dr. A. M. Young of Oklahoma City, in October and November, 1924, for syphilis.

Said defendant further answered stating

that had the company known of the untrue and false character of the applicant's answers and the treatment of the deceased, both before and after the application for insurance and before its delivery to him, it would not have entered into said contract of insurance.

The plaintiff filed a reply, and specifically denied that coronary embolism is a common and ordinary sequence to the previous disease of syphilis, and denied that the death of the insured was the result of the disease of syphilis; and specifically denied that the representations and answers made to the medical examiner were false and untrue, and known by him to be false and untrue when made. Said plaintiff further stated that the defendant's medical examiner, Dr. Hugh Jones, had full authority to recommend or reject the insured as a fit subject for insurance; that "if the statements and representations in said application for insurance or if any answers to the said medical examiner were incorrectly made or reported, the same were not purposely made to deceive the defendant company, and were not willfully fraudulent, false or misleading or made in bad faith."

The case was tried to a jury and a verdict was rendered in favor of plaintiff. Defendant assigns as error that the court erred in refusing to peremptorily instruct the jury to return a verdict for the defendant, and the refusal of the court to give certain requested instructions.

Section 6728, O. O. S. 1921, provides, in part, as follows:

"In any claim arising under a policy which has been issued in this state by any life insurance company, without previous medical examination or without the knowledge and consent of the insured, * * * the statements made in the application shall, in the absence of fraud, be deemed representations and not warranties: Provided, however, that the company shall not be debarred from proving as a defense to such claim that said statements are willfully false, fraudulent or misleading. * * *"

The policy in question contains the following provisions:

"The policy and the application therefor, copy of which is attached thereto, constitute the entire contract. All statements made by the insured shall, in absence of fraud, be deemed representations and not warranties. * * *"

Counsel for defendant state in their brief as follows:

"The earliest case that reached our Supreme Court since the enactment of section 6728, C. O. S. 1921, was that of Continental Casualty Co. v. Owen, 38 Okla. 107, 131 P. 1084. In this case the disease concealed was nephritis. There was a conflict in the testimony as to whether the disease in question was chronic or acute, and as to whether the insured had a defect of body which he concealed. Under these circumstances, the court held that under the statute in question the case was a proper one to submit to the jury to determine under the conflicting testimony the intent of the applicant in making them.

"In laying down this rule the court said:

"'Generally, the question of the falsity of the statements contained in a life or accident insurance policy and the intent of the applicant in making them is for the jury.'

"The decision of our court in Owen v. United States Surety Co., 38 Okla. 123, 131 P. 1091, rendered about the same time as the previous case, is to the effect that where fraud is alleged in the procuring of a written instrument, the proof must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and repel all opposing presumptions of good faith.

"In rapid succession have followed the decisions of our court in the following cases: American Bankers Insurance Co. v. Hopkins, 67 Okla. 150, 169 P. 489; Reserve Loan Life Ins. Co. v. Isom, 70 Okla. 277, 173 P. 841; and the three separate New York Life Insurance Company cases known as the Stagg, 95 Okla. 252, 219 P. 362; Clark, 110 Okla. 31, 235 P. 1081, and Smith, 123 Okla. 256, 271 P. 1037. Cases cited in the opening pages of this brief.

"So our court seemingly stands committed to the doctrine as expressed in these decisions that the intention of the applicant in making false answers is a question for the jury's determination, provided, however, the evidence is not so great as to oppose all opposing evidence and repel all opposing presumptions of good faith.

"We submit that under the record in this case a defense has been made out in the concealment by assured of the affliction in question, so great in its preponderance as to repel all opposing presumptions of good faith on the part of the applicant."

Counsel for defendant primarily assign as error that the court erred in refusing to peremptorily instruct the jury to return a verdict for the defendant; also that the court erred in giving instructions Nos. 3, 4, and 5, over their objections and in refusing to give certain requested instructions on the part of defendant; and that the court erred in excluding the testimony of certain officers of the defendant company whose duty it was to pass upon the application of insur-

ance made by deceased. Counsel argue in their brief as follows:

"In the instant case, however, there is no presumption in which a jury could possibly indulge, supported by any evidence whatsoever, that the intention and bad faith of the applicant in concealing the secluded and fatal malady with which he was suffering, could be reconciled with any theory other than intentionally false and made in bad faith. Nor could there be any possible finding by the jury of a waiver by the company on account of any knowledge it gained or could have gained through the medical examination of deceased.

"It is not necessary, under the record in this case, for us to take serious issue with the previous decisions of this honorable court, in asking the court, under the circumstances narrated, to reverse the trial court for error in its refusal to direct a verdict for the defendant. The verdict of the jury against the company is incapable of reconciliation upon any theory within reason, under the circumstances and facts of this case."

As against this contention it must be observed that the defense in this case is founded on fraud, misrepresentation, and concealment on the part of the insured in making his answer to the medical examiner for the purpose of obtaining a policy of insurance. Fraud is a question of fact. It is not presumed. It must be established by evidence like any other question of fact. The burden of proving this defense was upon the defendant. This court said, in the case of Illinois Oil Co. v. Pender, 137 Okla. 82, 277 P. 1026, in syllabus par. 1, as follows:

"When fraud is properly alleged upon the one hand and denied upon the other, the existence or nonexistence of such fraud becomes a question of fact for the jury to determine under proper instructions, and upon appeal the verdict of the jury upon such facts will not be disturbed by this court if there is any evidence reasonably tending to support such verdict."

In the case of New York Life Insurance. Co. v. Stagg, supra, this court held in the second paragraph of the syllabus as follows:

"Where a policy of life insurance provides that all statements made by the insured shall in the absence of fraud be construed as representations and not warranties, in order for misrepresentations made by the insured in an application to avail the insurer as a defense, it must show, not only that the statements were not true, but that they were willfully false, fraudulent, and misleading, and made in bad faith."

This syllabus was later approved by this court in the case of New York Life Ins. Co. v. Clark, 110 Okla. 31, 235 P. 1081. In the case of New York Life Ins. Co. v. Smith, 133 Okla. 256, 271 P. 1037, this court approved the Stagg and Clark Cases, supra, which involved the same form of policy as in the Stagg Case.

The case of Continental Casualty Co. v. Owen, supra, involved an action on an accident insurance policy wherein the contentions of the defendant were that the insured made certain statements in his application for insurance material to the risk which were false and that certain statements contained in the schedules of warranties included in the policy were untrue, and therefore material to the risk. The evidence showed that the insured had been suffering from nephritis immediately prior to the issuance of his policy. "There was a sharp conflict as to whether the disease was chronic or acute." There were other alleged false and fraudulent representations as to additional accident and health insurance. The insured also warranted in said policy:

"J. Except as here stated I have not had nor am I now suffering from tuberculosis, rheumatism, paralysis, nor any chronic, periodic, mental or physical ailment or disease, nor have I any defect in hearing, vision, mind, or body. No ex."

The court said:

"Generally, the question of the falsity of the statements contained in a life or accident insurance policy and the intent of the applicant in making them is for the jury." (Citing authorities.) * * *.

"The general rule undoubtedly is that, under statutes of this kind, questions as to the materiality of the statements and the intent of the insured to deceive are for the jury." (Citing authorities.)

"Under our statute, the statements made in an application for insurance must be shown to be willfully false in order to constitute a defense to an action on the policy. * * *

"Therefore, it is said that the court below should have instructed the jury that, as the insured must have known of the omitted policy when he took it, he is conclusively presumed to have known it when he signed his application, and so to have made the statement concerning his other insurance in bad faith. Judge Taft, who delivered the opinion for the court, said: 'The argument is unsound. We have here to deal with the statutory meaning of the phrase "misrepresentation in bad faith." "In bad faith" is not a technical term used only in actions for deceit. It is an ordinary

expression, the meaning of which is not doubtful. It means "with actual intent to mislead or deceive another." It refers to a real and actual state of mind capable of both direct and circumstantial proof. A man may testify directly to his knowledge and intention if they are in issue, and they may also be inferred from circumstances. If a man makes a statement in the honest belief that it is true, he does not make that statement in bad faith, even if his honest ignorance of the truth is the result of the grossest carelessness. * * *'

"The same may be said of the phrase 'willfully false, fraudulent, or misleading' as used in our statute. Statements to be willfully false, fraudulent, or misleading must be made with actual intent to mislead or deceive another."

The Supreme Court of Wisconsin in the case of Fiskbeck v. New York Life Ins. Co., 192 N. W. 170, decided January 9, 1923, being prior to the time of the denial of the rehearing in the Stagg Case, supra, and also prior to the decisions in Clark and Smith Cases, supra, carefully reviewed the decisions of this court relative to answers made to questions in an application for a life insurance policy. This was an action instituted in that state to recover on a life insurance policy on May 11, 1918, in the state of Oklahoma, the death of insured occurring on June 16, 1919, in Phoenix, Ariz. The application for the policy shows. among others, the following questions and answers:

"Have you ever suffered from any ailment or disease of the heart or lungs? No. Have you consulted a physician for any ailment or disease not included in your above answers? No. What physician or physicians, if any, not named above, have you consulted or been treated by, within the last five years and for what illness or ailment? (If none, so state.) None."

The insurance company alleged in its answer "that the statements to the effect that the deceased had never suffered any ailment or disease of the lungs and that he had not consulted or been treated by a physician within the last five years were untrue, willful, false, fraudulent, misleading, and made in bad faith, and that the policy was void"; that all the statements and answers were made by decedent to obtain the insurance and that it was understood and agreed that all such statements and answers were material to the risk and that defendant would rely on same.

The defendant introduced evidence relative to the treatments received by the insured from different doctors for asthmatic trouble; and that about ten days before the deceased made application for the insurance in question a doctor had given him serum for his asthmatic condition. At another time he had been in the hospital for four days on account of his condition. The action was governed by the laws of the state of Oklahoma, and not by the law of the state of Wisconsin, as the application was made in Oklahoma, where the insured resided, and the policy of insurance was delivered to him in Oklahoma. The law of the state of Oklahoma was pleaded by the defendant, offered in evidence, and parol testimony by an attorney familiar with the laws of Oklahoma was given as to their construction. The Supreme Court of Wisconsin reviewed with care our statute, 6728, supra, and the opinions of this court. This included the case of Eminent Household of Columbia Woodmen v. Prater, 24 Okla. 214, 103 P. 558, 23 L. R. A. (N. S.) 917, 20 Ann. Cas. 287; Continental Casualty Co. v. Owen, 38 Okla. 107, 131 P. 1084; Owen v. U. S. Surety Co., 38 Okla. 123, 131 P. 1091; National Union v. Kelly, 42 Okla. 98, 140 P. 1157; Springfield Fire & Marine Ins. Co. v. Null, 37 Okla. 665, 133 P. 235; American Bankers Ins. Co. v. Hopkins, 67 Okla. 150, 169 P. 489; Reserve Life Ins. Co. v. Isom, 70 Okla. 277, 173 P. 841, and cases therein cited.

In commenting on American Bankers Ins. Co. v. Hopkins, supra, wherein the defense was that the insured had made false and fraudulent representations by giving false answers in her application in reference to a tumor or cancer, and as to when she had last consulted a physician, the Wisconsin court, in 179 Wis. 369, 192 N. W. 170, said:

"The court held, approving former cases, that the policy was contestable only for **willful misrepresentations.**"

The Wisconsin court also discussed the case of Reserve Life Ins. Co. v. Isom, supra, wherein the defense was that the insured made false statements as to having consulted a physician, and also as to his age, and said:

"The court held, in line with former cases, that the burden rested upon the insurer to show that such statements were **willfully false, fraudulent, misleading, and made in bad faith.**"

It is to be observed that the language used by the Supreme Court of Wisconsin, to wit, that such statements "were willfully false, fraudulent, misleading, and made in bad faith," is the identical language as used in

instruction No. 4 by the trial judge in this case. This is the interpretation that the Wisconsin court in that case gave to the law of Oklahoma, after a careful review of our statute and the decision of this court, and was prior to the decisions of this court in Stagg, Clark, and Smith Cases, supra. That court also said in that case as follows:

"The trial court evidently sought to apply the law of Oklahoma as declared by the statutes and judicial decisions of that state, and he concluded that it did not imperatively follow that the policy was void because untrue statements had been made in the application. Under the law of Oklahoma, these statements were not warranties but representations only, and there remained the question whether they were fraudulently made. Under the laws of that state, the insured was not required, in answer to the questions, to state what medical attendance he had received for every ailment he may have had during the past five years, provided they were ailments which readily yielded to treatment and were not likely to impair the general health; hence, there would be no fraud in failing to disclose treatments for ailments of that character. * * *

"As we read the statute and these decisions, it is the policy of the state to construe quite liberally in favor of the insured, contracts of life insurance. In the execution of that general policy, statements in applications for insurance are by no means to be treated as warranties. In order to avoid forfeitures, such statements are representations only, and do not defeat recovery unless fraudulently made. The issue of fraud is for the jury to determine, and when a state of health becomes material, that also is a jury question."

In the case of United States Nat. Life & Casualty Co. v. Heard, 148 Okla. 274, 298 · P. 619, opinion April 28, 1931, wherein the defense of the insurance company was that the insured's death was caused from a venereal disease and that the insured made false and fraudulent statements as to her health in obtaining a revival of her policy, being an industrial insurance policy issued under the Industrial Act of 1923, chapter 60, Session Laws 1923, wherein section 15 provides as follows:

"No representation made in obtaining or securing a policy of insurance on the life or lives of any person, or persons, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable"

—this court, in the body of the opinion, said:

"The wording of this section in our opinion is merely another way of saying that statements of this character in an application for insurance shall, in the absence of fraud, be deemed representations and not warranties. This being true, if defendant relied upon the falsity of the statement contained in the application as a defense, the burden was upon it to prove the falsity thereof and that the same was made by the insured with the intent to deceive. American Bankers' Ins. Co. v. Hopkins, 67 Okla. 150, 169 P. 489; Owen v. W. S. Surety Co., 38 Okla. 123, 131 P. 1091; Continental Casualty Co. v. Owen, 38 Okla. 107, 131 P. 1084."

It is to be observed that this court in the Heard Case, supra, again approved the Hopkins Case, supra, Owen v. U. S. Surety Co., supra, and Continental Casualty Co. v. Owen, supra. In the Hopkins Case, this court said:

"In the case at bar the parties by their contract did not make the statements warranties, but on the contrary declared they, in the absence of fraud, shall be deemed representations. Such policies are contestable only for willful misrepresentations."

And in syllabus paragraph 1, as follows:

"Where, in an action on a life insurance policy, which contains a provision that 'all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties,' the falsity of such statements is relied upon as a defense, the burden is upon the insurer to show that such statements were made willfully and with intent to deceive; and the materiality of such statements and the intent of the insured to deceive are questions for the jury."

In the case of Sharrer v. Capital Life Insurance Co. of Colorado, 102 Kan. 650, 171 P. 622 (1918), the Supreme Court of Kansas held, in a policy which provided that the statements made by the insured in the absence of fraud be deemed representations and not warranties, that good faith in making such statements was sufficient, although they may have been incorrect in fact. The application in that policy contained a question in reference to whether the applicant ever had any disease of the stomach. The applicant answered he never had any disease of the stomach. Another question was, "How often during the five years did you consult a physician?" His answer was "no." It seems, however, that the applicant had consulted a physician about his digestive disturbance; that his stomach had been washed out, and that he had received some treatments, and that some months after the policy was issued

his trouble developed into cancer of the stomach, from which he died. The jury found that the deceased consulted one physician on June 28th, and on July 26, 1915, and another about August 25th, and, September 4th; and again, on September 27, 1915. The examination blank was dated September 27, 1915. In the body of the opinion the court said:

"It is argued that the truth and not the good faith of the answers is the scale tipping thing. But it is stated in the plaintiff's brief, and not disputed, that the policy contained the clause that:

" 'All statements made by the insured shall, in the absence of fraud, be deemed representations, and not warranties.' The rule in such cases is that good faith is sufficient. Mouler v. Insurance Co., 111 U. S. 335, 4 Sup. Ct. 466, 28 L. Ed. 447; Insurance Co. v. Woods, 54 Kan. 663, 39 P. 189. See, also, Farragher v. Knights and Ladies, 98 Kan. 601, 159 P. 3, and Diehl v. Mut. Life Ins. Co., 176 Ill. App. 462. The recent decision in American Bankers' Ins. Co. v. Hopkins, by the Supreme Court of Oklahoma, 67 Okla. 150, 169 P. 489, is very much in point."

It appears from the record that the deceased contracted syphilis in October, 1924; that he was about 39 years of age; that Dr. A. M. Young gave him treatment from October until March, 1925, and further treatment for about a month in June or July, 1925; that the application for insurance was dated November 10, 1926; that decedent had been examined by Dr. B. A. Hayes, one of the witnesses produced by the New York Life Insurance Company as an expert, who testified that he had examined and tested the deceased for syphilis in August, 1926; that he "made him a blood test and a careful physical examination" and found nothing to indicate that the deceased had syphilis. In this same connection he also testified as follows:

"A. I didn't accept his word one way or the other, and therefore I examined him especially thoroughly. Q. For the purpose of syphilis? A. Yes, sir. Q. And the Wasserman test showed negative? A. Showed negative."

As to the cause of his death, he testified as follows:

"Well, I can form an opinion, but I can't be for sure one way or the other. All I can say is that he died suddenly and that syphilis is one of the things which sometimes causes that sort of death."

There is no direct testimony that Mr. Weimer, the insured, died from any disease caused by syphilis.

The issue was presented to the jury as to whether the alleged incorrect answers were made "willfully and intentionally with intent to deceive" the defendant insurance company, and the jury found in favor of plaintiff. The court gave instructions numbered 3, 4, 5, to each of which the defendant objected, which instructions are as follows:

"3. You are instructed that inasmuch as the execution and delivery of the policy sued upon and the death of the insured have been admitted by the parties hereto, that the plaintiff is entitled to recover the sum of $2,000, less $76, the amount of the note, with interest from June 1, 1927, at six per cent., unless you should further find and believe from the evidence that the insured, Peter G. Weimer, in his answers to questions in said application attached to and made a part of the policy, and complained of here, willfully and intentionally, with the intent to deceive, falsely answered one or more of the said questions propounded to him, or a material part thereof, and if you so find, the plaintiff would not be entitled to recover and your verdict should be for the defendant in this case.

"4. You are further instructed that the law never presumes fraud or fraudulent representations, but it is incumbent upon the party alleging false and fraudulent misrepresentations to establish the same by a preponderance of the evidence. And in this case, it is incumbent upon the defendant to prove to you by a preponderance of the evidence that the insured made the statements relied upon by it in bar to the plaintiff's right of recovery in this case, and that said statements were material and were willfully false, fraudulent, misleading, and made in bad faith, and by the words 'bad faith', is meant an actual intent to mislead or to deceive another.

"5. Gentlemen of the jury, you are further instructed that the phrase, 'willfully false, fraudulent and misleading and made in bad faith', as used in these instructions, means that the statement of misrepresentation, if you find any were made, must have been made with actual intent to mislead or deceive, and that if the statements made by the deceased were made with the honest belief that they were true, even if his honest ignorance of the truth was the result of the grossest carelessness that such statement would not then have been made in bad faith or willfully false, fraudulent, and misleading as within the meaning of these instructions."

Counsel for defendant urge in their brief:

"These instructions go much further in the plaintiff's behalf than the wording of the statute justifies. In effect, the court told the jury that even though any representations in the application of Mr. Weimer for

the insurance were false, and though his misstatements resulted from honest ignorance or the grossest carelessness, then the jury was warranted in finding that the concealment by the applicant was not made in bad faith, willfully false, fraudulent, or misleading, and with the intention to deceive.

"The law laid down in these instructions as given by the court exceeds any known authority obtaining in Oklahoma or elsewhere, and if allowed to stand as the law of this state, will commit our court to a dangerous and unusual rule of law as applying to the contract of insurance plainly distinguished from any other character of contract which has been induced by fraud and misrepresentation."

By reference to the briefs in the Clark Case, supra, filed in this court, counsel for the New York Life Insurance Company, in its petition for rehearing in the Clark Case, supra, stated in their brief, as follows:

"At this time, we want to strenuously urge upon the court that the statute contains disjunctive instead of copulative conjunctions, in that it says an insurance company may urge as a defense that statements 'are willfully false, fraudulent, or misleading.' In the Stagg Case, supra, our court for the first time in its language, copulates these conjunctions and there uses the following language: 'Willfully false, fraudulent, and misleading.' The use of the copulative conjunction in the opinion in the Stagg Case, supra, rather than disjunctive conjunctions, as provided by the statute, mark the first time our court has ever attempted to read into the statute stronger language than it, itself, contends for."

This court denied the petition for rehearing and adhered to the interpretation of the statute announced in its former opinions, to wit, Reserve Loan Life Insurance Co. v. Isom, supra, and the Stagg Case, as set forth in said syllabus paragraph No. 2 of said Stagg Case, hereinbefore quoted.

This court has plainly interpreted the meaning of section 6728, C. O. S. 1921, and counsel for plaintiff in error now seek to overthrow these decisions, and in this connection does so in spite of the fact that the policy in question was written subsequent to the announcement of the law by this court in Stagg, Clark and Smith Cases, supra. If these misrepresentations on the part of the insured were willful misrepresentations made in bad faith and with the intent to deceive, this would constitute a valid defense for the insurance company, but these are questions of fact for the determination of the jury, or for the court

sitting as a jury. It is immaterial whether the misrepresentations were "willfully false, fraudulent or misleading" or whether they were "willfully false, fraudulent and misleading" in view of the decisions of this court. In either event, if said misrepresentations are material to the risk and were willfully made in bad faith, with the intent to deceive, and thereby the insured secured the issuance of a policy of insurance, then said contract of insurance would be void. The intent of the deceased in making his statements in his application for insurance was a question for the jury, and the jury found against defendant on this question.

In the case of Continental Casualty Co. v. Owen, supra, this court said:

"Generally, the question of the falsity of the statements contained in a life or accident insurance policy and the intent of the applicant in making them is for the jury."

We find no error in the instructions submitted to the jury. The same were in harmony with the rulings announced by this court in the Owen, Stagg, Clark and Smith Cases, supra. Counsel for defendant also urge that the court committed error in excluding the testimony of the physician of the insurance company who passed medically upon the risk, to the effect that had the interrogations complained of been answered by the insured properly, and he had not concealed the fact that he had the disease of syphilis, it would have been his duty not to approve the application. In defendant's brief counsel stated as follows:

"Defendant then offered further testimony of this witness which was excluded by the court on objection by the plaintiff that it would have been his duty as medical adviser of the company, had he known that the answers of Weimer were not full, complete, and true, to suspend action thereon for the purpose of investigating and getting full details of the applicant's direct medical history and that had he become informed or had reason to believe that Mr. Weimer had suffered from and been treated by physicians for syphilis, it would have been his duty, under the defendant's rules, to not have approved the application, and he would not have approved the same."

This court, in the case of Continental Casualty Co. v. Owen, 38 Okla. 107, 131 P. 1084, in the sixth paragraph of the syllabus states:

"Evidence is inadmissible to show that facts suppressed or falsely represented in an application for insurance would have been deemed material by the insurance company,

and that the company would not have issued the policy or would have canceled the same if issued, had it known the truth in regard tnereto, but insurance experts may state the usages of insurance companies generally in respect to charging higher rates or premiums or in rejecting risks or in canceling policies, if issued, when made aware of the particular facts in question."

In the body of the opinion, the court says:

"The rule is that: 'An insurance expert cannot be permitted to give his opinion that certain undisclosed facts increased the risk of a life policy, but he may state the usage of insurance companies as to rejecting risks when made aware of such facts.' Penn. Mt. L. Ins. Co. v. Mechanics Sav. Bank & Trust Co., 72 Fed. 413, 38 L. D. A. 33, supra.

"The general rule is stated in 25 Cyc. 937, as follows: 'Evidence is inadmissible to show that facts suppressed or falsely represented in the application would have been deemed material in passing upon the application, and that the company would not have issued the policy had it known the truth in regard thereto. But insurance experts may state the usage of insurance companies generally in respect to charging higher rates of premium or in rejecting risks when made aware of the particular fact in question.' "

In the case at bar, the physician of the insurance company did not attempt to testify relative to the usages of the insurance company generally. He testified what would have been his duty under the rules of his company.

We find no error in the ruling of the trial court in excluding this testimony. We are of the opinion that it is unnecessary to discuss this case further. The jury had all the facts and circumstances surrounding the making and signing of the application in question and by their general verdict found that there was no willful intent to deceive the insurance company by any material statement or representations contained in the application. From an examination of the record and briefs and authorities cited therein, we conclude that there is no reversible error.

The judgment of the trial court is affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur.