CLEMONS, Adm'r, v. HAMPTON.

No. 30170. Jan. 12, 1943.

*132 P. 2d 919.*

694

Frank Hickman, of Tulsa, for plaintiff in error.

Holliman & Harkin, of Bartlesville, for defendant in error.

DAVISON, J. In this case we review on appeal a cause which originated in the district court of Washington county.

The action is based upon a promissory note for the principal sum of $697.34, executed by Leon Clemons on July 20, 1937, due 90 days after date and payable to the order of L. E. Cash. It was instituted in the trial court on April 8, 1938, by Wade Hampton, as plaintiff, who averred that he was a holder in due course by reason of the alleged purchase thereof from the payee before maturity. He also asserted that at the time of his purchase of the note he, together with one T. R. Wilson, was liable thereon as accommodation endorser, having endorsed the note at the time it was made at the request of and as an accommodation to Leon Clemons. The note was assigned to Hampton, without recourse, by endorsement of the payee, dated September 28, 1937. Leon Clemons was named as the sole defendant in the action.

Leon Clemons in his answer admitted the execution of the note, denied that Hampton was a holder in due course, and asserted that there was no consideration for the note, or, in the alternative, if there was any consideration, it was illegal and against public policy.

The cause was tried to the court without the aid of a jury and resulted in a judgment for the plaintiff for the principal sum of the note, together with interest at 8 per cent per annum (as specified by the note) accrued and accruing, and an attorney's fee of $73.74 (calculated in accord with the provisions of the note).

The defendant, Leon Clemons, brought the case to this court on appeal. He died pending this appeal and the cause has been revived in the name of William Wheeler Clemons, as his administrator. Our continued reference to the parties will be in the order of their appearance before the trial court.

In the journal entry of judgment the trial court found generally for the plaintiff, which by implication includes a particular finding favorable to the prevailing party on all issues of fact. However, in orally pronouncing judgment the trial court announced its conclusion that the plaintiff was not a holder in due course. This conclusion was based upon the theory that the plaintiff was at all times prior to his acquisition of the note thoroughly familiar with all of its infirmities, if any existed.

The question of whether the conclusion announced in the oral pronouncement may be properly considered as limiting the special findings as implied from the general finding contained in the journal entry is one which need not be passed upon in this appeal since we have concluded that the judgment should be sustained even though the plaintiff was not a holder in due course. In other words, the conclusion favorable to the defendant on the particular point is insufficient to impair the judgment which should be sustained upon other consideration. (Dealing with the purpose for which the opinion of the trial court may be considered, see Rogers v. Harris, 76 Okla. 215, 184 P. 459.)

In this opinion it is assumed without deciding that Hampton is not a holder in due course, and the evidence which charges him with knowledge of the infirmities in the note will be treated as true, even though contradicted.

Thus Hampton, as the present owner of the note, stands before this court in the same relative position as the original payee, Cash. Incidentally, Hampton's ownership of the note is not disputed.

We must now determine whether there is any evidence reflected by the

695

record supporting the trial court's decision that the note was founded upon sufficient and valid consideration. Our consideration of this decisive feature of the case naturally suggests three questions which will be treated consecutively: First, what is the evidence relating to consideration? Second, what constitutes consideration as a matter of law? Third, is the contract here involved, tainted with illegality?

Leon Clemons was, during his lifetime, and at the time of the transactions herein involved, the owner of several tracts of real estate situated in Washington county, Okla., which were subject to ad valorem taxes and on which the taxes for years preceding the transactions here involved had been allowed to become delinquent. Although the exact amount of the delinquent taxes is not important in this litigation, it is proper to note that they aggregated a substantial sum.

The plaintiff, Wade Hampton, was the county treasurer of Washington county. T. R. Wilson, who is not a party to this litigation but who is asserted to have endorsed the note when it was made, was the county clerk of Washington county. L. E. Cash was a resident of Okmulgee county.

In 1937 the Legislature of this state enacted Senate Bill No. 285, art. 14, ch. 66, S. L. 1937, which purported to authorize the board of county commissioners of each of the several counties of the state to make reductions of the assessed valuation of property in its county for 1936 and prior tax years. The conditions upon which such reductions could be made as well as the method available for procuring the same were set forth in the act. The act was intended to become effective on May 3, 1937. According to the testimony of Mr. Clemons, he became aware in June of 1937 that the Legislature had passed a law authorizing the board of county commissioners to make reductions in the assessed valuations of property upon which delinquent taxes had accumulated. He decided to invoke the provisions of the law in connection with the delin-

quent taxes against his property. For that purpose he paid a visit to the office of the county clerk during the first part of July, 1937. He and the county clerk (T. R. Wilson) commenced but did not complete an application for relief under the legislative enactment. A few days later Mr. Wilson and Mr. Hampton visited Mr. Clemons' office. They were accompanied by Mr. Cash, who was introduced to Mr. Clemons as a person who could assist him in procuring the desired reduction in the assessed valuation. Following this introduction and during the time which intervened before July 20, 1937, a number of conversations and consultations occurred between Clemons and Cash relative to the contemplated reduction in assessments. This brings us to July 20th, the date of the note. What transpired on that date is reflected by the following excerpts from the testimony of Mr. Clemons. As a witness in his own behalf he stated:

"Q. On the 20th of July, tell the court what happened? A. I filled out a paper that is something new that I never seen before. I signed that. Q. Was that with reference to reducing your assessment? A. Yes. Q. Is that the first application or affidavit for reduction that you had signed? A. Yes. Q. Was that the 20th of July? A. Yes, sir. Q. What else did you sign? A. Well, I gave him a check for the amount of the taxes. Q. How much? A. $2,004 or $2,009, and I don't remember which. Q. To whom did you make it payable? A. County treasurer. . . . Q. I see. On that occasion did you give this note that is sued on in this case? A. Yes, sir. . . . Q. Mr. Clemons, I think the court indicated something we should bring out in evidence. Your note on its face, and according to the petition, is in the principal sum of $697.43. What are the facts with reference to the amount of the note and why you gave the note? A. I gave that for the work that was to be done of getting this before the commissioners—getting it in the proper place where it should go to get this reduction in taxes. (Emphasis ours.) Q. Well, first of all, how did the amount, this uneven amount of $697.43, happen to be written in as the principal sum in the note? Did you do that or did Cash do that? A. Well, sir, I don't know who

wrote that part of the note, but it was arrived at—how was the figure arrived at? Q. Yes. A. A portion of the reduction of the taxes, as best I remember. Q. In other words, at that time you and he arrived at some figure that you thought the taxes would be reduced. Is that right? A. Yes, sir. Q. Now, did you give that note in consideration of getting your assessment reduced? A. Yes, sir. . . ."

This testimony is in some respects contradicted by testimony more favorable to the plaintiff, and with respect to the question of consideration there is a measure of inconsistency in the quoted testimony. Was the consideration for the note the agreement of Cash to perform the necessary work to cause the county commissioners to reduce the assessment as a matter of record or was it given in consideration of Cash procuring an effective reduction of the delinquent taxes against the property? If the former, the task undertaken was performed. If the latter, it was not, for the law purporting to authorize the deduction was subsequently declared unconstitutional by this court, and it has been decided that reductions of assessment obtained under the act were ineffective to relieve property from its predetermined tax burden. State ex rel. Tharel v. Board of County Com'rs of Creek County, 188 Okla. 184, 107 P. 2d 542; Ivester v. State, 183 Okla. 519, 83 P. 2d 193 (decided July 26, 1938); notice, also, Peterson v. Roberts, 186 Okla. 496, 100 P. 2d 431.

The last statement above quoted from the testimony of Clemons, standing alone, might be sufficient to support the view that Cash undertook to produce definite beneficial results; however, viewed in the light of his previous clear and positive statement (as indicated by our emphasis in the quoted testimony) that the consideration was the work to be done by Cash in getting the matter before the commissioners, the testimony clearly supports the view (and the presumed included finding of the trial court) that the consideration was the agreement of Cash to obtain action by the county officers sufficient to cause

such reduction of the assessed valuation as could be granted under the law which had not then been judicially declared unconstitutional. This was accomplished, though complaint is made that the record of the action was not regularly made up at the proper time. It was the unconstitutionality of the law, not the irregularity, that rendered the attempted partial relief against delinquent taxes ineffective. Clemons' check for the amount of the taxes as attempted to be reduced was accepted. Appropriate, though perhaps belated, entries reflecting the proper action to accomplish the legislative purpose of the law were made upon the county records.

In the face of the trial court's finding on the question of consideration, we cannot say that Cash undertook to do something which he could not do by reason of the unconstitutionality of the law.

In this connection it may be noted that consideration for a promise is not necessarily dependent upon benefits conferred. It may rest upon detriment sustained or agreed to be sustained by the promisee. In fact, the statutes of this state expressly so provide. 15 O. S. 1941 § 106 provides in part:

". . . or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

The point is elemental and additional authority need not be cited. Thus in the case at bar the agreement of Cash to bring the matter before the county officers and procure an action by them to reduce assessed valuation under the legislative act was an agreement to suffer prejudice other than such as he at the time of consent was lawfully bound to suffer.

The evidence therefore supports the trial court's view that there was a consideration for the note. The consideration viewed from the standpoint of the promisee as a detriment did not fail.

Our third question remains for consideration. Was the contract tainted with illegality?

The theory upon which the defendant relies to support the charge of illegality is that the county treasurer and county clerk were participating with Cash in the compensation received from Clemons. As stated in the brief, it is his contention that "the county treasurer and the county clerk of Washington county were profiting by Clemons' promise to pay for procuring reduced assessments."

The illegality of such an arrangement may be assumed without analysis or discussion on the point since a fatal weakness exists in the defendant's proof. There is no specific proof establishing such an arrangement. The defendant relies solely upon inferences which he says should be drawn from acts which show interest on the part of the officers in the transaction. The trial court evidently concluded that a fraudulent arrangement and improper motive could not be assumed by reason of circumstances and conduct which, to say the most, arouse only suspicion and conjecture that an illegal arrangement may have existed. Illustrative of the proof on this phase of the case and the inferences relied upon to disturb the decision of the trial court, we mention a few of the circumstances said to establish the suspected unlawful agreement in connection with the transaction.

Defendant points first to the fact that the officers introduced and recommended Cash to the taxpayer. He emphasizes that they "went out of their way" in so doing by accompanying Cash to the taxpayer's office. Certainly the officers were not required as a matter of official duty to take such an interest in the matter. Likewise their alleged accommodation endorsement of the taxpayer's note was outside the duties of their office. They also worked diligently as officers in bringing about the attempted reduction in assessment as well as in establishing a permanent though belated record of the reduction. These efforts, though connected with the conduct of their respective offices, are said to be significant. These circumstances might be valuable as corroborative evidence in support of more definite proof, but such definite proof does not exist. Standing alone they are insufficient in probative value to warrant a disturbance of the trial court's judgment.

Fraudulent collusion or conspiracy is not presumed in law. Satisfactory proof must be produced. New York Life Ins. Co. v. Carroll, 154 Okla. 244, 7 P. 2d 440; Davis v. Howe, 99 Okla. 118, 226 P. 316.

No proposition is presented herein urging illegality on any other grounds.

The judgment of the trial court is affirmed.

WELCH, C. J., CORN, V. C. J., and RILEY, OSBORN, BAYLESS, GIBSON, HURST, and ARNOLD, JJ., concur.